B–H, INC., Defendant Below, Appellant,

v.

"INDUSTRIAL AMERICA", INCORPORATED, Plaintiff Below, Appellee.

"INDUSTRIAL AMERICA", INCORPORATED, Plaintiff Below, Cross-Appellant,

v.

FULTON INDUSTRIES, INC., Defendant Below, Cross-Appellee, and

B–H, Inc., Defendant Below.

Supreme Court of Delaware.

April 24, 1969.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for B–H, Inc., defendant below, appellant, and Fulton Industries, Inc., defendant below, cross-appellee.

David A. Drexler and Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff below, cross-appellant and appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This is an appeal from a judgment for a broker's commission. The determinative question presented is the propriety of the instructions to the jury relative to the issue of procuring cause.

## I.

Insofar as they need be recited for the purpose of this opinion, these are the pertinent facts:

The plaintiff "Industrial America", Incorporated was a broker specializing in the sale or merger of businesses. Acting through its president and principal stockholder, Millard B. Deutsch, the plaintiff first communicated in 1964 with Bush Hog, Inc. (now known as B–H, Inc., defendant herein) regarding the possibility of a merger with a larger corporation. B–H, a farm machinery company, had let it be known among several brokers that it was interested in a merger. With B–H's authorization and armed with documentary data furnished by it, Deutsch first ap-

proached the Borg Warner Corporation with the B–H merger possibility; but nothing came of that effort. Next, again with B–H's authorization and up-dated material, Deutsch attempted to interest the Wickes Corporation in the merger possibility. After negotiations were carried on for several months between the two corporations, Deutsch participating actively therein, the talks ceased in early 1965. During the Wickes discussions, Deutsch outlined to B–H the commission arrangement he would expect if the merger were consummated. After the Wickes negotiations ended, according to B–H, it decided not to deal further with Deutsch or any other broker; but this decision was never communicated to Deutsch. In the fall of 1965, Deutsch learned that Fulton Industries, Inc., defendant herein, was an "acquisition minded" company. It had advertised in a newspaper of national circulation its interest in acquiring machinery or industrial product lines by purchase or merger, emphasizing that brokers would be "fully protected." [1] On October 7, 1965, Deutsch wrote to Fulton describing but not naming, B–H as a prospective acquisition; the response dated October 14 was a request for financial data. On October 19, Deutsch replied by naming B–H as the prospect and transmitting financial data supplied to him by B–H. By letter dated October 22, Fulton stated it was "very much interested", and requested Deutsch to arrange a visit by the Fulton people to the B–H plant. By letter of October 26, with copy to Fulton, Deutsch advised B–H of Fulton's interest and suggestion for a visit. At some time after October 26 and prior to November 2, Fulton's executive vice president telephoned B–H's president directly and arranged a meeting for November 4. Deutsch first learned of this when, on No-

vember 3, he inquired of B–H regarding its failure to reply to his letter of October 26. Despite his repeated efforts and offers to assist, neither B–H nor Fulton dealt further with Deutsch; they both ignored his inquiries except for B–H's promise to keep him informed. Negotiations between B–H and Fulton continued until March 11, 1966, when a merger agreement between them was consummated.

The plaintiff's action against B–H was for a commission upon the basis of implied and quasi-contract. The action against Fulton was on the ground of wrongful interference with the contractual relationship between B–H and the plaintiff. At the trial, Fulton's motion for directed verdict was granted for lack of evidence of wrongful interference. The Trial Judge denied the plaintiff's motion, made during trial, to amend its complaint to assert a cause of action based upon the plaintiff's reliance upon Fulton's newspaper advertisement and its representation therein that brokers would be "fully protected." The plaintiff's theory in this connection was that such representation was an undertaking to pay the broker's fee in the event that the seller did not. The issue of B–H's liability was submitted to the jury on special interrogatories. The jury found (1) that by its conduct B–H had impliedly promised to pay the plaintiff a fee if it performed services as a broker in the sale of the B–H business; (2) that this promise extended to the Fulton transaction; (3) that the efforts of the plaintiff in introducing Fulton to B–H did not lead directly to the consummation of the transaction; but (4) that after the introduction of Fulton to B–H, the plaintiff was excluded by B–H from the negotiations without reasonable cause and in spite of its reasonable ef-

1. The advertisement was as follows:
   "WANTED—PRODUCT LINES!
   "Heavy or Medium Machinery or Industrial Products
   "One of Fulton Industries' divisions desires additional products to manufacture. Its modern manufacturing facility of more than 250,000 sq. ft. includes: grey iron foundry, heavy and light machining, sheet metal forming, and capable engineering, sales and service staffs.
   "Fulton will buy outright, or acquire by merger, active product line with annual sales of $2 million or more. Will take over manufacture, sales, service and key people. Brokers fully protected."

forts to assist in the consummation of the transaction. The jury thereupon found for the plaintiff and against B–H in the amount of $125,000.

The matter is before us on B–H's appeal from the verdict and judgment entered in plaintiff's favor; and upon the plaintiff's cross-appeal from the denial of leave to amend the complaint as to Fulton, and from the directed verdict in Fulton's favor.

## II.

The main thrust of B–H's appeal is based upon Special Interrogatories 3 and 4 to the jury, and the Trial Court's instructions relative thereto:

Interrogatories 3 and 4 were as follows:

"3. Did the efforts of the plaintiff in introducing Fulton to Bush Hog lead directly to the consummation of the transaction between Bush Hog and Fulton?

"Answer Yes or No. _____

"If your answer is yes, skip question 4 and answer question 5.[2] If your answer is no, answer question 4.

"4. Was the plaintiff, after the introduction of Fulton to Bush Hog, excluded from the negotiations by Bush Hog without reasonable cause and in spite of reasonable efforts on its part to assist in the consummation of the transaction?

"Answer Yes or No. _____

"If your answer is yes, answer question 5.[2] If your answer is no, do not answer any more questions."

In connection with these two Interrogatories, the Trial Judge charged the jury:

" * * * The next two questions are directed to the sufficiency of performance. The first issue of performance which you must decide is the issue of procuring cause. Unless his performance is unjustly prevented by his principal, a broker must be the procuring cause of a sale to be entitled to a fee. Indeed procuring cause is a common element of the plaintiff's case under either the contract claim or the quasi-contract claim. The plaintiff contends it was the procuring cause. The defendant contends the plaintiff was not."

Paraphrasing the next portion of the charge relating to Interrogatory 3: The Trial Judge stated that there cannot be two procuring causes of a transaction; that a broker is the procuring cause of a transaction if his efforts bring the seller and purchaser together and lead directly to the consummation of the transaction; that, in the instant case, it is undisputed that the plaintiff brought the parties together but that there is a factual dispute as to whether plaintiff's efforts led directly to the consummation of the transaction; that a broker's efforts in finding the purchaser may lead directly to the consummation of the transaction even though he does not participate in the subsequent negotiations leading to consummation of the transaction; that, on the other hand, a broker's efforts do not lead directly to the consummation of a transaction merely because he found the purchaser; that, therefore, in one transaction the introduction of the buyer and seller may be the "key event from which the transaction naturally flowed", while in another transaction the result may be entirely different. Then, the Trial Judge told the jury:

" * * * In this case it is for you to judge whether the plaintiff's efforts in bringing the seller and purchaser together led directly to the consummation of the transaction.

"If you find they did, your answer to question 3 should be 'Yes', and you should skip question 4 and go directly to question 5 and question 6. If not, your answer to question 3 should be 'No' and

2. Question 5 related to measure of damages.

you should answer question 4. All of these instructions are on the interrogatories themselves, so you do not have to remember the order of the questions.

"Question 4 is directed to a special factual setting and a concept of fair dealing recognized in law. Where a broker introduces a buyer to the seller and continues to manifest a reasonable effort to assist in the consummation of the negotiations he must be given a reasonable opportunity to consummate the sale with the buyer he presented. A seller cannot without reasonable cause ignore or intervene so as to deprive a broker of his fee. Such action on the seller's part is said to be in bad faith. If the seller does so act the broker is entitled to the same fee to which he would have been entitled if he had consummated the transaction, even though it cannot be said that his efforts led directly to the consummation of the transaction.

    \*    \*    \*    \*    \*    \*

"If your answer to question 4 is 'Yes', answer questions 5 and 6. If your answer to question 4 is 'No', you need not answer any more questions. This is because a 'No' answer to both questions 3 and 4 results in a defendant's verdict under either cause of action."

After the jury had deliberated for about three hours, it sent a note to the Trial Judge: "The jury requests that the Judge repeat that part of his charge which defines 'procuring cause'." After consultation with counsel, the Trial Judge repeated in entirety the instructions as previously given relative to both Interrogatories 3 and 4. The jury returned in about half an hour and answered Interrogatory 3 in the negative and Interrogatory 4 in the affirmative.

▆ It was prejudicial error, in our opinion, for the Trial Judge thus to charge, under the circumstances of this case in which there is no issue of bad faith dismissal, that there may be a recovery of broker's commission even though the broker's efforts did not lead directly to the consummation of the transaction.

▆ The general rule is that a broker may recover a commission only when he is the procuring cause of a consummated transaction. Two exceptions to the general rule have been recognized: First, a broker may be entitled to a commission, even though he was not the procuring cause of a consummated transaction, if after producing the prospect he was dismissed by his principal in bad faith as a device to avoid the commission. Secondly, if a duly authorized broker produces a prospect ready, willing, and able to meet his principal's expressed terms, the commission has been earned whether or not the transaction is thereafter consummated; and this is so even though the principal may thereafter withdraw the broker's authority and dismiss him. Canaday v. Brainard, 1 Storey 226, 144 A.2d 240 (1958); Slaughter v. Stafford, 1 Storey 168, 141 A.2d 141 (1958).

The instant case falls within the general rule. Bad faith dismissal was not presented as an issue, either by the pleadings or the evidence. And, since B–H's merger terms were not definite until after the negotiations with Fulton were well under way, it cannot be said that upon the introduction of Fulton to B–H, Deutsch had produced a prospect ready, willing, and able to meet B–H's terms. This left Deutsch in the position of earning a fee if, and only if, a consummated transaction resulted from his efforts and he was the procuring cause thereof.

▆ The governing rule was set forth by this Court in Canaday v. Brainard, 1 Storey 226, 144 A.2d 240, 244 (1958) as follows:

"A broker may not recover commissions unless he is the procuring cause of the sale. Slaughter v. Stafford, Del. [1 Storey 168], 141 A.2d 141. He is the procuring cause of a sale if his efforts bring his principal and the purchaser together and lead directly to the consum-

mation of the transaction. 8 Am. Jur. 'Brokers', § 172; Restatement, Agency, § 448. This is simple enough to state, but circumstances vary widely, and the rule is often difficult of application.

"In cases where the negotiations do not progress promptly to a conclusion, but, after considerable delay, are finally satisfactorily concluded between the principal and the purchaser, close questions arise. In such cases the courts have evolved a subsidiary rule that in order for the broker to be the procuring cause of the sale it must appear that there was no substantial break in the negotiations. Restatement, Agency, § 448, comment d. Slaughter v. Stafford, supra.

"Whether there was a 'substantial break' in the negotiations depends not so much on lapse of time as upon the chain of circumstances—the question of causation. Ordinarily this is a question of fact for the jury, since its resolution must often depend on a choice of possible inferences. But if only one inference is possible from the admitted facts the court must resolve the question."

In the instant case, it was contrary to the rule thus stated to instruct the jury that it could find for the plaintiff even though it found that the efforts of the plaintiff, in introducing Fulton to B–H, did not lead directly to the consummation of the transaction and, therefore, did not constitute the procuring cause of the transaction.

It appears that the Trial Judge relied upon Slaughter v. Stafford, 1 Storey 168, 141 A.2d 141 (1958) in formulating Interrogatory 4 and the related instruction here under scrutiny. *Slaughter* laid down rules governing the bad faith discharge of a broker *vis a vis* his right to a commission. As has been noted, however, in the instant case wrongful dismissal was not the issue presented. The issue presented was the effect of the exclusion of the plaintiff from further participation in the transaction after introduction of the prospect. We address ourselves to that issue:

The exclusion of a broker by his principal, after introduction of the prospect, from further participation in the negotiations and consummation of the transaction will not, *per se,* divest the broker of his status as procuring cause. If it can be said that there was a direct chain of causation from introduction to consummation, with no substantial break in the negotiations, then it can be said that the broker making the introduction was the procuring cause of the transaction, his inability to do more by reason of the intervention of his principal notwithstanding. In the absence of agreement to the contrary, a principal has the privilege of taking over the negotiations from his agent, after introduction of the prospect, and acting on his own behalf in the consummation of the transaction. Such substitution by the principal of himself for his agent, *per se,* does not amount to a dismissal of the broker. And the action of the principal in so doing does not become an intervening or predominant cause such as will constitute a break in the chain of causation that, otherwise, would "lead directly" from introduction to consummation and constitute procuring cause.

Applying those concepts to the instant case: Deutsch could not be deprived of his status as procuring cause, if such he had, by B–H's action in excluding him from participation in the negotiations and consummation of the transaction. The issue is whether Deutsch's efforts in producing Fulton was the first link in a direct chain of causation leading to the consummation of the transaction, without a substantial break in the negotiations. If so, the plaintiff was the procuring cause and entitled to a commission even though B–H forged the remaining links in the chain. If not, the plaintiff was not the procuring cause of the transaction and was not entitled to a commission.

For the reasons stated, we think it reasonable to assume that Interrogatory 4 and its related instruction were fatally misleading to the jury in its deliberations upon the issue of procuring cause under Interrogatory 3. Since the jury could answer either Interrogatory 3 or Interrogatory 4 in the affirmative, but not both, it is probable that they weighed the "leading directly to the consummation" Interrogatory 3 against the "wrongfully excluded from negotiations" Interrogatory 4; and they concluded that, as between the two, the latter more correctly fit the factual situation. The mutually exclusive treatment of the concepts contained in the two interrogatories and their accompanying instructions must be held to constitute reversible error as to the issue of procuring cause.

We conclude, therefore, that there must be a new trial of the issue of procuring cause. It is unfair and unnecessary, however, to require a new trial of all the other issues in the case, the special interrogatories and the jury's answers thereto having made manifest the specific area tainted by the error we deem prejudicial. Accordingly, the cause will be remanded for retrial of the issue of procuring cause only.

In so holding, we have given due consideration to two other grounds of appeal proffered by B–H: First, it is argued that the Trial Court erred in refusing to instruct the jury that a broker may act as agent of either the buyer or seller. The only contractual liability supported by any evidence was that of B–H. In the light of the evidence, the Trial Judge properly declined to charge on the possibility of a contractual relationship with Fulton. Secondly, it is contended that the Trial Court erred in instructing the jury that there was no issue presented as to the authority of the president of B–H to act for his corporation in dealing with Deutsch. We agree with the Trial Court that, under all of the facts and circumstances, such corporate authority was necessarily implied. We find no error in the charge as given on these facets of the case.

### III.

As to the cross-appeal, we find no merit in the plaintiff's contentions:

1) The Trial Court did not commit error in denying the plaintiff's motion to amend its complaint as to Fulton, made as it was in mid-trial. We agree with the Trial Court that, under the circumstances, the application for leave to amend came too late, introducing as it did for the first time during trial a cause of action against Fulton sounding in contract; and creating as it did for the first time the possibility of a conflict for trial counsel who represented B–H and Fulton jointly.

Now, however, since the case is to be reopened for trial of the issue of procuring cause, the exigencies of the situation will be entirely different. In the interest of justice, we think that, on remand, the issue which the plaintiff sought to raise by the amendment should have further consideration by the Trial Judge in the light of the posture of the case at that time. The plaintiff's motion to amend the complaint as to Fulton may be renewed to that end.

2) The Trial Court did not err in directing a verdict in Fulton's favor for lack of evidence as to wrongful interference with the plaintiff's relationship with B–H. The only evidence in this respect was that Fulton made direct contact with B–H. We agree with the Trial Court that, especially in view of B–H's knowledge of Deutsch's involvement, this evidence was insufficient to warrant submission to the jury of the issue of unlawful interference.

* * *

The judgment below is reversed and the cause remanded for further proceedings not inconsistent herewith.