**AMATO & STELLA ASSOCIATES, INC., a Delaware corporation, Plaintiff,**

v.

**FLORIDA NORTH INVESTMENTS, LTD., an Illinois General Partnership, Defendant.**

**Civ. A. No. 87–90–JRR.**

United States District Court, D. Delaware.

Feb. 5, 1988.

Edmund D. Lyons, Jr., of Aerenson, Ferrara & Lyons, Wilmington, Del., for plaintiff.

Rodman Ward, Jr., and David J. Margules, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., for defendant.

## OPINION

ROTH, District Judge.

Plaintiff, a real estate brokerage firm, brings this action to recover a commission of $125,000 from defendant. Plaintiff claims that, pursuant to a listing agreement it had with defendant, plaintiff provided a ready, willing, and able buyer for defendant's Colonial Village Apartments complex. Defendant moves for summary judgment on the grounds that oral listing agreements cannot be enforced in Delaware and that, if a written listing agreement existed, its terms were not met. Plaintiff rejects that legal characterization of oral listing agreements, alternatively argues that plaintiff should be allowed to proceed on a *quantum meruit* claim, based on the services performed to obtain a buyer for the property and asserts that an enforceable written listing agreement existed. For the reasons set forth below, the Court finds: (1) under Delaware law, oral listing contracts are unenforceable; (2) an alternative *quantum meruit* claim cannot be permitted; but (3) plaintiff has adequately stated a breach of contract claim based on the written listing agreement.

## I. FACTS.

For the purposes of this summary judgment motion, we view the facts in the light most favorable toward the non-movant, the plaintiff. *Securities and Exchange Commission v. Bonastia,* 614 F.2d 908, 913–14 (3d Cir.1980).

In late 1986, defendant Florida North Investments, Ltd. (Florida North) contacted Robert Stella, a licensed Delaware real estate broker and one-third owner of plaintiff, Amato & Stella Associates, Inc. (Amato & Stella). Florida North wished to sell its Colonial Apartments complex. According to Stella, the parties immediately reached an oral listing agreement. Under this agreement, if Stella located a buyer ready, willing, and able to meet defendant's terms, then Florida North would pay Stella a $150,000 commission.

Stella quickly discovered a prospective purchaser, Robert Berman. Negotiations ensued between Berman and Florida North in which Stella actively participated. In an effort to consummate the deal, Stella reduced his commission to $125,000. On December 31, 1986, according to Stella, the parties reached agreement, signing three documents: a Contract for Deed, a Management Agreement, and a Supplementary Agreement.[1] Under those documents as a whole, Berman was given until February 15, 1987, to post an irrevocable $200,000 letter of credit. The deal was scheduled to close March 31, 1987. During the interim, Florida North would remain the manager of the apartment complex, held responsible for its expenses and paid only out of its proceeds. In sum, these documents amounted to neither a contract nor a binding option on December 31, 1986. No consideration exchanged hands at that time. Berman could await February 15, 1987, to decide whether or not to proceed with the deal.

The Contract for Deed also provided for Stella's commission:

1. Actually, because Berman was not available to sign these documents, Stella himself was the ostensible purchaser; in addition to the three documents, Stella provided Florida North with a purported assignment of his contract rights to Berman.

15.12B Amato & Stella Associates— Seller shall be responsible for said broker's commission in the amount of $125,-000.00, which commission shall be payable on the Payment Date [March 31, 1987] if Buyer makes the payments required of it on such date.

However, despite these documents, Berman was not afforded the opportunity either to post the letter of credit on February 15, 1987, or to close the deal on March 31, 1987. On December 31, 1986, soon after having executed the documents, Florida North agreed to sell the apartment complex to another buyer, Allied Properties Group, Ltd. (Allied Properties), which was apparently willing to make an immediate down payment. Florida North deliberately did not inform Stella or Berman that their deal had collapsed until January 9, 1987, the approximate day Allied Properties actually delivered its down payment.

Shortly thereafter, Amato & Stella initiated this lawsuit. Previous to our ruling today, the Court decided that plaintiff could not proceed on a claim premised on plaintiff having been the procuring cause of a consummated transaction. Plaintiff now proceeds on his alternative claim that plaintiff, a duly authorized broker, produced a prospect ready, willing, and able to meet defendant's expressed terms. See *B–H, Inc. v. "Industrial America," Inc.*, 253 A.2d 209 (Del.Super.1969).

## II. LEGAL STANDARDS.

This Court exercises diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Consistent with *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we apply the law of Delaware. However, since the Delaware

Supreme Court has not ruled on any of the three issues discussed below, this Court must anticipate how the Delaware Supreme Court would rule on each question.

## III. LEGAL ANALYSIS.

### A. Enforceability Of Oral Listing Agreements Under Delaware Law.

■ Pursuant to 24 Del.C. § 2905(1), the Delaware Real Estate Commission (the "Commission") is empowered to "[a]dopt and revise such rules and regulations not inconsistent with the law as may be necessary to enable it to carry into effect this Chapter [29]." Among the regulations promulgated by the Commission is one which proscribes oral listing agreements. Regulation IX(A)[2] provides: "Listing Agreements for the rental, sale, lease or exchange of real property, whether exclusive, co-exclusive or open shall be in writing and shall be signed by the seller or owner." Delaware Real Estate Commission, *Real Estate License Act & Primer* 28–29 (1984).[3] The issue then arises: Does the mandate of § 2905(1) encompass promulgation of Regulation IX(A)?[4]

An understanding of the purpose motivating Chapter 29 and its delegation of authority to the Commission facilitates our analysis. The Delaware Legislature has unequivocally stated:

The primary objective of the Real Estate Commission, to which all other objectives and purposes are secondary, is to protect the general public, especially those persons who are direct recipients of services regulated by this chapter from unsafe practices.

24 *Del.C.* § 2928. Regulation IX(A)'s requirement that listing agreements be written promotes the goal of § 2928. Use of oral listing agreements can be deemed an

---

**2.** Misnumbered "Regulation IV" in Delaware Real Estate Commission, *Real Estate License Act & Primer* 28 (1984).

**3.** The Commission has also issued *A Code of Ethics.* Article 20 thereof states: "The Broker [,] for the protection of all parties, shall see that financial obligation[s] and commitments regarding real estate transactions are in writing, expressing the exact agreement of the parties." Delaware Real Estate Commission, *Real Estate License Act & Primer* at 49. However, we find

this Code, the preamble of which invokes the Golden Rule, precatory.

**4.** We note that while Regulation IX(A)'s requirements were in effect when the Delaware Supreme Court decided a case involving an oral listing contract, the real estate regulations were not discussed at all by the Supreme Court in that case, leaving the issue of their effect open. *Nepa v. Marta,* 348 A.2d 182 (Del.1975); Delaware Real Estate Commission, *Commission Meeting Minutes* 3 (March 4, 1970).

"unsafe practice." Reduction of listing agreement to writing helps to establish fair dealings between parties, standardize real estate practice, and prevent fraud. *Green Mountain Realty, Inc. v. Fish,* 133 Vt. 296, 336 A.2d 187, 189 (1975) (analyzing similar regulation). The high courts of Vermont, Arizona, and Iowa, examining similar statutory grants of regulatory power to a state real estate commission, have held similar regulations within the pale of delegated authority. *Green Mountain, supra; Red Carpet–Barry & Associates, Inc. v. Apex Associates, Inc.,* 130 Ariz. 302, 635 P.2d 1224 (1981); *Milholin v. Vorhies,* 320 N.W. 2d 552 (Iowa 1982). In light of the Delaware legislature's purpose and this analogous precedent, the Court, predicting the ruling of the Delaware Supreme Court, finds that Regulation IX(A) falls within the mandate afforded the Commission by § 2905(1).

■ Having found Regulation IX(A) to be valid, we must next measure its effect. Plaintiff argues that violation of Regulation IX(A) should be a licensing matter purely between itself and the Commission and should not affect the validity of its oral listing agreement. Defendant responds that Regulation IX(A) renders an oral listing agreement unenforceable upon proper objection. On this point, we find Delaware Supreme Court precedent particularly instructive. In *E.A. Strout Co. v. Howell,* 85 A. 666 (Del.1913), the Supreme Court studied the effect of a law requiring that real estate brokers be licensed. The law, like Regulation IX(A), did not expressly term a contract in violation thereof unenforceable. Furthermore, the Court acknowledged the primary objective of the law was to raise revenue. *Id.* at 667. Nevertheless, the Court went on to emphasize a secondary objective of the law—to protect the public. To implement that objective, it ruled that contracts entered into by non-licensed brokers were unenforceable. *Id.* at 668.

Employing the methodology advised by the Delaware Supreme Court, we find the primary objective of Regulation IX(A) is to protect the public. Accordingly, to give it its due effect, the Court finds that Regulation IX(A), while not invalidating all oral listing contracts, renders them unenforceable upon proper objection. That *Strout* dealt with a law, and we here are dealing with a regulation, cannot make a difference once it has been determined that the regulation was duly promulgated pursuant to a legislative grant of power. The three state high courts cited above each arrived at the conclusion we reach today. *Green Mountain,* 336 A.2d at 189–90; *Red Carpet–Barry,* 635 P.2d at 1226; *Milholin,* 320 N.W.2d at 554.

Plaintiff refers to the language of *Lock v. Schreppler* that a review of Title 24, Chapter 29 "support[s] the impression that Chapter 29 was solely intended to provide a method of regulating the licensing of real estate brokers." *Lock v. Schreppler,* 426 A.2d 856, 865 (Del.Super.1981). Accordingly, plaintiff argues that the mandate of the Commission should be tightly circumscribed. However, the subsequent passage of 24 *Del.C.* § 2928 legislatively rescinded *Lock's* judicial "impression." Furthermore, *Lock* must be placed in proper legal context. In that case, plaintiff buyer filed an action for statutory and common law fraud against seller's real estate agent. Plaintiff argued that 24 *Del.C.* § 2912(a), authorizing the commission to reprimand brokers or revoke their licenses, provided a statutory private remedy against the broker. The Superior Court held that it would be inconsistent with the statute to permit a statutory cause of action for fraud which duplicated an existing common law remedy. In the present case, on the other hand, defendant argues that Regulation IX(A), which bars a specific practice, should be given effect in order to accomplish the regulation's intended purpose. This defense would expand the protection afforded the clients of real estate brokers, consistent with the statute and regulations. *Lock* simply does not control the disposition of the legal issues before this Court.

**B. Making a *Quantum Meruit* Claim For Services Rendered.**

■ Alternatively, plaintiff argues that it be allowed to amend the complaint to state a *quantum meruit* cause of action. Accepting that plaintiff can amend his complaint under the liberal standard of *Foman*

*v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Court finds that a *quantum meruit* recovery is legally foreclosed. Precedent strongly supports the proposition that a broker, having neglected a statutory demand for a written listing contract, cannot alternatively recover in *quantum meruit*. *See* Annotation, *Real Estate Broker's Right To Recover In Quantum Meruit For Services Although Contract Is Not In Writing As Required By Statute*, 41 A.L.R.2d 906, 907–10 (1955). Neglect of a valid regulatory demand for a written listing contract should be of identical consequence. Allowing the plaintiff to recover for services rendered, despite noncompliance with Regulation IX(A), would significantly undercut the purpose and intent of the regulation. *See Maynes Real Estate, Inc. v. McPherron*, 353 N.W.2d 425, 427 (Iowa 1984).

This issue again has not been decided by the Delaware Supreme Court. However, in view of the fact that the requirement of written listing agreements is for the protection of the public, we would expect the Delaware Supreme Court would follow the majority position on this question, rather than permitting the effect of Regulation IX(A) to be seriously weakened. For this reason, we will not allow the amendment to assert the *quantum meruit* cause of action.

### C. The Written Listing Agreement.

██ Plaintiff asserts that a written listing agreement exists, referring to Paragraph 15.12(B) of the December 31, 1986 Contract for Deed. As the Contract for Deed is in writing and was signed by the seller, it satisfies the requirements of Regulation IX(A). To be effective, a "commission contract need not be written in advance; it can, as in the case at bar, be included as part of the landowner's acceptance of the prospective purchaser's proposition." *Frash v. Eisenhower*, 176 Ind. App. 659, 376 N.E.2d 1201, 1203 (1978).

The defendant argues that this written listing agreement is of no avail to the plain-tiff because Paragraph 15.12(B) specifies the "commission shall be payable on the Payment Date if Buyer makes the payments required of it on such date." Since Berman never tendered payment, defendant insists, Stella's right to his commission never accrued. Plaintiff responds that Berman never had an opportunity to tender payment in light of the sale to Allied Properties, charging that action amounted to bad faith on the defendant's behalf.

In determining the effect of Paragraph 15.12(B) as a written commission agreement, we must decide whether it must stand or fall with the Contract Deed in which it is incorporated or whether it can be given effect independent of the Contract of Deed. Does its validity depend upon the Florida North/Berman deal being closed or is it merely a written agreement between plaintiff and defendant which happens to be memorialized in another writing. We must consider whether the plaintiff produced a ready, willing, and able buyer and was then only prevented by bad faith on the part of the seller from bringing about the occurrence of the event upon which the payment of the commission was conditioned.

We cannot on the record before us resolve the factual disputes concerning the above questions. Therefore, this aspect of the case must go to trial.

In summary, we hold that while causes of action based on an oral listing agreement cannot proceed, a cause of action based on the written listing agreement can. We emphasize that our holding is only that the plaintiff's cause of action based on the written listing agreement is adequate to withstand defendant's motion to dismiss for failure to state a claim upon which relief can be granted. We express no opinion or prediction as to the plaintiff's ability to prove his case at trial or the defendant's ability to refute that case.

An appropriate order will be entered.