Chabbott **PETROSKY, Commercial Realtors, Ltd.,** Plaintiff Below, Appellant,

v.

Robert J. **PETERSON** and Bonnie S. **Peterson,** Defendants Below, Appellees.

No. 479,2003.

Supreme Court of Delaware.

Submitted: July 21, 2004.

Decided: Sept. 28, 2004.

**9.** 66 Cal.Rptr.2d at 364 (Emphasis in original. Citations omitted.)

Margaret R. Cooper, Esquire, of Hudson, Jones, Jaywork & Fisher, Georgetown, Delaware, for Appellant.

Constantine F. Malmberg, III, Esquire, and Ronald G. Poliquin, Esquire, of Young & Malmberg, P.A., Dover, Delaware, for Appellees.

Before HOLLAND, BERGER and JACOBS, Justices, PARSONS, Vice Chancellor,[1] and HARTNETT, Justice (Retired),[2] constituting the Court en Banc.

BERGER, Justice.

In this appeal, we consider whether a real estate broker should be compensated for services performed in obtaining a long-term lease when the broker's listing agreement addressed only a sale of the property in question. The Superior Court held that, because a Delaware Real Estate Commission regulation requires all listing agreements to be in writing, the broker could not recover under a claim that the parties orally modified the agreement, or *quantum meruit.* We disagree. Under the facts of this case, where the long-term lease expressly recognizes the broker's entitlement to compensation, we hold that the broker may maintain an action based on *quantum meruit.*

### Factual and Procedural Background

Robert and Bonnie Peterson own a commercial property in Dover, Delaware. George Chabbott, of Chabbott Petrosky Commercial Realtors, Ltd., approached the Petersons to discuss the sale of their property. Chabbott indicated that he had a prospective buyer, and the Petersons entered into a 90–day exclusive listing agreement on June 20, 2000. The agreement provided that the property would be offered for sale at a price of $750,000 and that Chabbott would be paid a commission of five percent of the sale price.

On August 15, 2000, Delaware Food Ventures, Inc. made an offer to purchase the property for $665,000. The Petersons made a counter-offer of $700,000, and the parties thereafter negotiated a long-term lease instead of a sale. The lease, executed on October 31, 2000, is for a 20 year term with two five-year renewal options. The rent is set at $70,000 per year for the

---

**1.** *Designated pursuant to Art. IV, § 12 of the* Delaware Constitution and Supreme Court Rules 2 and 4.

**2.** *Designated pursuant to Art. IV, § 38 of the* Delaware Constitution and Supreme Court Rules 2 and 4.

first five years with incremental increases every five years thereafter. Paragraph 21.7 of the lease provides that there is no commission, charge or other compensation due to any broker, except for Chabbott.

In August 2000, after the parties had executed a letter of intent for the lease, Chabbott discussed his commission with the Petersons. Chabbott testified that he agreed to accept five percent of the Petersons' $700,000 counter offer ($35,000), which was considerably less than the standard commission for a long-term lease. The Petersons did not agree to that amount as a lump sum payment. They proposed five annual payments of $7,000 each, but their counter-offer was rejected. Chabbott continued to maintain the escrow account through which rent payments were made, but the parties never settled their differences as to the commission.

Chabbott filed this action in October 2001. The Superior Court did not make any factual findings as to whether the parties reached any oral agreements for the payment of a commission. Rather, it held that, since there was no written agreement for the lease of the property, no commission could be recovered under a contract theory or under *quantum meruit*. The trial court did find, however, that Chabbott performed compensable services in managing the escrow account and negotiating the terms of the lease. The court awarded Chabbott a total of $5,583.33 for those services.

### Discussion

The Delaware Real Estate Commission regulates the licensing and conduct of real estate brokers. Its "primary purpose ... is to protect the general public, especially those persons who are direct recipients of services regulated by this chapter from unsafe practices, and from occupational practices which tend to reduce competition or fix the price of services rendered." [3] Commission Rule 7.1.1 provides that, "[l]isting agreements for the rental, sale, lease or exchange of real property, whether exclusive, co-exclusive or open shall be in writing and shall be signed by the seller or owner."

In *Eastern Commercial Realty Corp. v. Fusco,* [4] this Court held that an oral listing agreement is unenforceable because it violates Rule 7.1.1 and the public policy underlying the rule. The Court explained that, "oral listing agreements can be an unsafe practice and the requirement that listing agreements be in writing helps to foster fair dealings between parties, standardize real estate practice, prevent fraud and avoid litigation." [5]

In *Fusco,* the broker did not seek recovery under *quantum meruit,* a quasi-contract claim that allows a party to recover the reasonable value of his or her services if: (i) the party performed the services with the expectation that the recipient would pay for them; and (ii) the recipient should have known that the party expected to be paid. [6] Other courts, however, have considered whether a *quantum meruit* claim may be maintained in the absence of a written listing agreement. In *Amato & Stella Assocs., Inc. v. Florida North Investments, Ltd.,* [7] for example, a federal court held that there could be no recovery under *quantum meruit.* The court reasoned that, "[a]llowing

---

3.  24 *Del.C.* § 2929.

4.  654 A.2d 833 (Del.1995).

5.  *Id.* at 835.

6.  *Construction Systems Group, Inc. v. Council of Sea Colony, Phase I,* 1995 WL 622421 (Del. Supr.)

7.  678 F.Supp. 445 (D.Del.1988)

the plaintiff to recover for services rendered, despite non-compliance with [the written listing agreement regulation], would significantly undercut the purpose and intent of the regulation."[8]

In *Hursey Porter & Assoc. v. Bounds*,[9] by contrast, the Superior Court held that a broker could recover under *quantum meruit.* The court found that *Amato,* and other similar decisions, were distinguishable because in *Porter,* the broker complied with the writing requirement at the outset, and produced a buyer before the written agreement expired. Given those facts, the *Porter* court found that it would not undercut the purpose of the Commission's regulation to allow recovery under *quantum meruit.*

■ For similar reasons, we conclude that Chabbott may recover under *quantum meruit* notwithstanding that there was no written listing agreement for the transaction that was consummated—a long-term lease. First, Chabbott did not ignore the written listing agreement requirement. He obtained a properly executed written listing agreement. Second, Chabbott procured the prospective "buyer" during the term of the agreement. Third, after the nature of the transaction shifted, the lease—another writing—expressly acknowledged that a commission was due to Chabbott. Finally, the trial court found as a fact that Chabbott performed services in procuring the tenant and negotiating the terms of the lease. Under these circumstances, it would not undercut the policy embodied in Rule 7.1.1 to allow recovery for the reasonable value of services rendered.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed and this matter is remanded for further action consistent with this opinion. Jurisdiction is not retained.

---

8. *Id.* at 449.

9. 1994 WL 762670 (Del.Super.)