# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BABETTE S. EDGAR, Pharm.D., MBA, FAMCP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N23C-05-232 SPL |
| | ) | |
| TROY HOLDINGS, INC, a Delaware corporation | ) | |
| Defendant. | ) | |

Submitted: March 24, 2025
Decided: May 13, 2025

## DECISION AND ORDER
## AFTER TRIAL

Kevin G. Fasic, Esq., OFFIT KURMAN, P.A., *Attorney for Plaintiff Babette S. Edgar, Pharm.D., MBA, FAMCP.*

Thaddeus J. Weaver, Esq., DILWORTH PAXSON LLP, *Attorney for Defendant Troy Holdings, Inc.*

**LUGG, J.**

**INTRODUCTION**

In July of 2022, Dr. Babette S. Edgar ("Dr. Edgar") agreed to serve on Troy Holdings, Inc.'s ("THI") Board of Directors. For her service, THI agreed to compensate Dr. Edgar $60,000.00 per year, paid quarterly, pro-rated for any partial quarter of service.[1] When Dr. Edgar joined the Board, the company was under investigation for its alleged non-compliance with federal regulations. Dr. Edgar's pre-existing relationships and extensive health care compliance experience presented THI an opportunity to address its compliance issues.

In March of 2023, eight and a half months after Dr. Edgar joined the THI Board, THI's new CEO learned that Dr. Edgar expected compensation for her service; he promptly acted to remove her from THI's Board. Dr. Edgar sought compensation for the time she served on the Board and, when THI remained steadfast in its refusal to, this litigation commenced. Dr. Edgar's complaint alleges that THI breached the contract; she seeks the pro-rated sum of $42,500.00.

Following a one-day bench trial, the Court concludes that the evidence supports Dr. Edgar's claim.

---

[1] Pl. Ex. 1 ("Agreement").

BACKGROUND

## A.    The Parties

Dr. Edgar has worked in the health care industry for more than three decades and served as a consultant on regulatory and pharmaceutical issues for over nineteen years.  THI, a Delaware corporation, is a healthcare insurance company that provides a Medicare advantage plan for low-income individuals.  Non-party Ethan Lipkind ("Lipkind"), THI's Chief Executive Officer ("CEO") and member of its Board, testified at trial on behalf of THI.

## B.    The Agreement

On July 4, 2022, Dr. Edgar signed an agreement (the "Agreement") to become a member of THI's Board of directors.[2]  Under the agreement, THI agreed to compensate Dr. Edgar at a rate of "$60,000 per year, paid quarterly, pro-rated for any partial quarter of service."[3]  The Agreement specified that, "[d]uring [Dr. Edgar's] appointment, [she] will be expected to attend board meetings and to devote such time and attention as may be necessary for [her], in conjunction with the other members of the Board, to effectively discharge [her] duties as a member of the Board."[4]  The Agreement contained an integration clause, which stated:

---

[2] *Id.* at 5.

[3] *Id.* at ¶ 3(A).

[4] *Id.* at ¶ 2.

This letter contains the entire agreement between [Dr. Edgar] and [THI] concerning [Dr. Edgar's] service as a member of the Board and supersedes all previous agreements, promises and understandings between the parties, whether written, oral or implied.[5]

The Agreement did not require Dr. Edgar to perform any other specific tasks to be compensated.[6] The Agreement further provided that Dr. Edgar's removal from her position on the Board would take place "in accordance with the Company's bylaws and the DGCL."[7]

## C. A Unique Opportunity

After many years in the health care regulation industry, Dr. Edgar believed a position on THI's Board presented her with a unique opportunity to enhance compliance in the health care industry. Before Dr. Edgar joined THI's Board, the Centers for Medicare and Medicaid Services ("CMS"), a regulatory arm of the federal government, had been investigating THI for potential violations of federal law. Its investigation continued while Dr. Edgar served on THI's Board, and CMS requested that Dr. Edgar, in her official capacity as a Board member, participate on certain investigatory calls.

To assess THI's alleged non-compliance with federal law, Dr. Edgar set up a compliance subcommittee within THI. Dr. Edgar met with Lipkind and Sally Scott,

---

[5] *Id*. at ¶ 9(a).

[6] *See generally*, *Id.*

[7] *Id*. at ¶ 1.

3

THI's compliance officer, on a weekly basis. Dr. Edgar testified that she not only attended all compliance subcommittee meetings, but that she guided these meetings to probe THI's issues. In her time on THI's Board, Dr. Edgar focused on compliance with federal regulatory law and performed some operational work.

Later in 2022, Dr. Edgar participated in the search for THI's new CEO. Dr. Edgar testified that she interviewed several candidates for this position. When Flaviu Simihaian, THI's at-the-time CEO, suggested Lipkind as a candidate, Dr. Edgar interviewed him. Following Lipkind's interview, Dr. Edgar contacted a compensation company to determine an appropriate salary, worked with outside counsel to finalize Lipkind's contract, and negotiated other aspects of Lipkind's contract. Dr. Edgar explained that she spearheaded the search, obtained the agreement with Lipkind, and brought his contract to the Board for its approval. Lipkind became THI's CEO on October 1, 2022.

While a member of the Board, Dr. Edgar stated that she was praised for her work and that nobody associated with THI ever informed her that she was not providing sufficient executive level strategic advice, or that her efforts to remediate the compliance issues were unsatisfactory. But on March 15, 2023, Lipkind called Dr. Edgar and informed her that THI was removing her from the Board and would be replaced with someone who could help raise capital. Dr. Edgar declined Lipkind's offer to remain with THI in an uncompensated consulting role.

4

As a member of the Board, Dr. Edgar attended every Board meeting as required under the Agreement. Dr. Edgar contends THI owes her the pro-rated sum of $42,500.00 for her eight and a half months service. THI, for its part, does not dispute that it did not pay Dr. Edgar. Rather, THI contends that Dr. Edgar's performance does not warrant compensation.

## D. The Dispute as to Dr. Edgar's Compensation

THI's current CEO, Lipkind, testified that he negotiated his contract with THI's former CEO, and, contrary to Dr. Edgar's testimony, that Dr. Edgar's involvement in negotiating his contract was minimal. Lipkind testified that Dr. Edgar did not engage investors, submit any tangible work product, or provide executive level strategic advice to further THI's objectives. In Lipkind's view, Dr. Edgar's lack of production justified removing Dr. Edgar from THI's Board and withholding her payment under the terms of the Agreement.

Lipkind agreed that Dr. Edgar's role on the Board was to remediate compliance issues. Lipkind explained that Dr. Edgar never became involved with operational problems, and she informally created the compliance subcommittee via a single email. Lipkind acknowledged that Dr. Edgar never missed a Board meeting, but he described her as a silent participant.

Lipkind recognized that Dr. Edgar's involvement with THI preceded his and that he was not involved in THI's contract negotiation with Dr. Edgar. Lipkind

5

agreed that Dr. Edgar's contract did not require her to bring investors to THI but maintained that THI wasn't paying her simply to attend Board meetings. In his view, common sense dictates that Dr. Edgar should have known THI's expectations of her. When Lipkind learned that Dr. Edgar was expecting compensation for her Board position, he worked to remove her from the Board.

## GENERAL LEGAL PRINCIPLES

In a civil trial, the plaintiff "bears the burden of proving its claims by a preponderance of the evidence."[8] Proof by a preponderance of the evidence means "proof that something is more likely than not."[9] "This means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes the Court believe that something is more likely true than not."[10] If the evidence presented by the parties "is inconsistent, and the opposing weight of the evidence is evenly balanced, then 'the party seeking to present a preponderance of the evidence has failed to meet its burden.'"[11] To determine if the plaintiff has met its burden, the Court "may consider the testimony of all witnesses regardless of who called them, and all exhibits received into evidence regardless of who produced them."[12]

In a bench trial, the Court sits as the fact finder.[13] This role requires the Court to "assess the credibility of the witnesses and then to weigh all of the evidence

---

[8] *See, e.g.*, *Navient Sols., LLC v. BPG Office Partners XIII Iron Hill LLC*, 2023 WL 3120644, at *10 (Del. Super. Apr. 27, 2023) (internal citation omitted).

[9] *Feenix Payment Sys., LLC v. Blum*, 2024 WL 2768386, at *10 (Del. Super. Ct. May 29, 2024).

[10] *Id*.

[11] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 545 (Del. Super. Ct. 2005) (quoting *Eskridge v. Voshell*, 593 A.2d 589 (TABLE), 1991 WL 78471, at *3 (Del. 1991)).

[12] *Feenix Payment Sys., LLC*, 2024 WL 2768386, at *10.

presented."[14] The Court is "free to accept or reject any or all of the sworn testimony, as long as it consider[s] all of the evidence presented," just as a jury does.[15] Where the Court cannot reconcile conflicting evidence, it retains discretion to determine which evidence deserves more weight.[16]

In reaching its verdict, the Court has examined the exhibits and considered the testimony of the witnesses. The fact that some particular point or concept may be mentioned should not be read as any indication that the Court did not consider all evidence and legal principles applicable to this case. It is difficult at times to completely segregate findings of fact from conclusions of law; to the extent any one of the Court's factual findings might be more appropriately viewed as a conclusion of law, that finding of fact may be considered the Court's conclusion of law on that point. The Court has considered Delaware caselaw defining the legal precepts applicable to the claims and defenses offered by the parties. The Court applied the Delaware Rules of Evidence to the testimony and exhibits and, in its deliberation, has relied only upon that which would be admissible under those rules. And the

---

[13] *See, e.g.*, *Torres v. Bishop*, 2021 WL 6053870, at \*4 (Del. Super. Ct. Dec. 21, 2021) (citing *Pencander Associated, LLC v. Synergy Direct Mortg. Inc.*, 2010 WL 2681862, at \*2 (Del. Super. Ct. June 30, 2010)).

[14] *Mundy v. Devon*, 906 A.2d 750, 755 (Del. 2006).

[15] *Pardo v. State*, 160 A.3d 1136, 1150 (Del. 2017).

[16] *Torres*, 2021 WL 6053870, at \*4.

Court has considered each party's arguments on their respective theory of the case and any weight to be assigned to testimony or evidence.

## ANALYSIS

Dr. Edgar seeks to recover the pro-rated sum of $42,500.00 she contends THI owes her under the Agreement. Dr. Edgar's complaint asserts claims of *quantum meruit* and breach of contract.[17] To justify its refusal to pay Dr. Edgar, THI alleges Dr. Edgar did not fulfill her required duties under the Agreement. At trial, Dr. Edgar and THI agreed that Dr. Edgar could not recover under the theory of *quantum meruit*.[18] As a result, the Court is only tasked with determining Dr. Edgar's breach of contract claim.

### A.     Breach of Contract

THI has refused to pay Dr. Edgar the compensation set forth in the Agreement. Dr. Edgar asserts that THI's failure to pay constitutes a breach of the Agreement;

---

[17] Compl. ¶¶ 8-16.

[18] *Quantum meruit* is a "quasi-contract claim that allows a party to recover the reasonable value of his or her services if: (i) the party performed the services with the expectation that the recipient would pay for them; and (ii) the recipient should have known that the party expected to be paid." *Petrosky v. Peterson*, 859 A.2d 77, 79 (Del. 2004). A quasi-contract is "one where the law will infer the existence of a contractual relationship without regard to the actual intention of the parties where circumstances are such that justice warrants a recovery as though there had been a promise or contract." *LCT Capital, LLC v. NGL Energy Partners LP*, 2022 WL 17851423, at *4 (Del. Super. Ct. Dec. 22, 2022). Here, the Court need not "infer the existence of a contractual relationship" between Dr. Edgar and THI because both Dr. Edgar and THI agree that Dr. Edgar's claims are based upon a contract – the validly executed Agreement between the parties. "If it is determined that the relationship of the parties and the services involved in [the] claim are the subject of an express contract, the terms of that contract control and there is no occasion to

10

THI counters that it does not owe Dr. Edgar any compensation because she failed to fulfill her duties and responsibilities under the Agreement. The Court finds the evidence establishes Dr. Edgar satisfied the negotiated terms of the Agreement and, thus, that THI must fulfill its contractual obligation and pay Dr. Edgar the compensation it promised her – the pro-rated sum of $42,500.00.

"The elements of a breach of contract claim are: '(1) the existence of a contractual obligation, (2) a breach of that obligation, and (3) damages resulting from the breach.'"[19] The parties agree that a contract was forged between Dr. Edgar and THI, and the Court finds the existence of a contractual obligation. "[A] valid contract exists when (1) the parties intended that the instrument would bind them, demonstrated at least in part by its inclusion of all material terms; (2) these terms are sufficiently definite; and (3) the putative agreement is supported by legal consideration."[20] The "overt manifestation of assent – not subjective intent –

---

pursue the theory of *quantum meruit*." *Boissonneault v. Delaware Podiatric Medicine, P.A.*, 2024 WL 5055538, at *4 (Del. Super. Ct. Dec. 9, 2024).

[19] *Zenith Energy Terminals Joliet Holdings LLC v. CenterPoint Properties Trust,* 2023 WL 615997, at *9 (Del. Super. Ct. Jan. 23, 2023) (quoting *Buck v. Viking Hldg. Mgmt. Co. LLC,* 2021 WL 673459, at *3 (Del. Super. Ct. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003))).

[20] *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.3d 1153, 1158-59 (Del. 2010)).

11

controls the formation of a contract."[21] A signed writing "generally offers the most powerful and persuasive evidence of the parties' intent to be bound."[22]

The signed Agreement confirms THI and Dr. Edgar's intent to be bound.[23] On July 1, 2022, THI's then CEO – Flaviu Simihaian – signed the Agreement and requested Dr. Edgar's signature to confirm her agreement to the terms.[24] Dr. Edgar promptly signed and returned the Agreement to THI.[25] There being no doubt that the Agreement constituted a binding and enforceable contract between the parties, Dr. Edgar must show she fulfilled her contractual duties and that THI failed to pay her under the Agreement.

Under Delaware law, contracts are construed objectively, meaning how they would be understood by an "objective, reasonable third party."[26] "When interpreting a contract, th[e] Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[27] The Court must "focus on the actual language agreed

---

[21] *Eagle Force Holdings, LLC*, 187 A.3d at 1229 (internal citations omitted).

[22] *Eagle Force Holdings, LLC*, 187 A.3d at 1230.

[23] *See* Agreement.

[24] *Id*. at 5.

[25] *Id*.

[26] *Osborn ex rel. Osborn*, 991 A.2d at 1159.

[27] *North Am. Leasing, Inc. v. NASDI Holdings, LLC*, 276 A.3d 463, 467 (Del. 2022) (internal citations omitted).

to and used by the parties" to maintain the goal of Delaware law to "ensure freedom of contract and promote clarity in the law [and thus] facilitate commerce."[28]

THI, through its now-CEO Lipkind, implores the Court to divine THI's subjective intentions rather than apply the Agreement's express terms. Lipkind testified that THI wasn't paying Dr. Edgar to attend Board meetings, and that Dr. Edgar's performance under the Agreement did not rise to an acceptable level based on how these deals function. THI asserts that Dr. Edgar failed to provide executive level strategic advice and deliver tangible work product. But THI did not reduce these expectations to express terms in its Agreement with Dr. Edgar.[29] And, as he readily admits, Lipkind did not participate in any negotiations leading to THI's agreement with Dr. Edgar.

The Agreement between Dr. Edgar and THI delineated their respective duties and responsibilities. As the Delaware Supreme Court has explained,

> A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings … The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.[30]

---

[28] *Salamone v. Gorman*, 106 A.3d 354, 370 (Del. 2014).

[29] *See* Agreement.

[30] *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (internal citations omitted).

13

Dr. Edgar's duties under the Agreement were unambiguous. A reasonable person, at the time of signing, could not have understood the Agreement to require Dr. Edgar to "provide executive level strategic advice" or "deliver tangible work product" as THI now asserts. Instead, an objective, reasonable person would understand that Dr. Edgar's duties under the contract were to "attend board meetings and to devote such time and attention as may be necessary for [Dr. Edgar] … to effectively discharge [her] duties as a member of the Board."[31] And, based on Dr. Edgar's and Lipkind's testimony, it is evident that Dr. Edgar attended all Board meetings and strived to remediate the company's compliance issues. The Court will not rewrite the parties' Agreement simply because Dr. Edgar did not yield the results THI now claims to have expected.

Where, as here, a contract is unambiguous, the Court gives effect to the plain meaning of the contract's terms. "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[32] Under the Agreement, THI promised Dr. Edgar a salary "of $60,000 per year, paid quarterly, pro-rated for any partial quarter of service."[33] By failing to

---

[31] Agreement at ¶ 2.

[32] *Salamone*, 106 A.3d at 368.

[33] Agreement at ¶ 3(A).

14

compensate Dr. Edgar, THI has breached its contractual obligation. Dr. Edgar is owed $42,500.00, the pro-rated sum THI agreed to pay Dr. Edgar for eight and a half months service on THI's Board.

## B. Attorneys' Fees

Both Dr. Edgar and THI requested the award of attorneys' fees and costs. Delaware follows the American Rule, which provides that each side pays its own attorneys' fees and costs.[34] "Aside from express statutory authorization, Delaware recognizes only a limited number of exceptions to the American Rule."[35] These exceptions allow for fees to be shifted: (1) under statute or court rule; (2) when included as a term of a contract; (3) a party acts in bad faith in litigation; (4) a party fails to follow a court order or is held in contempt; or (5) under the "common fund" doctrine.[36] The Court does not find the evidence supports any recognized exception to the American Rule, thus, as the parties recognized in their closing arguments, this is not a case warranting fee shifting. Neither party is awarded attorneys' fees or costs.

---

[34] *In re Delaware Pub. Schools Litig.*, 312 A.3d 703, 715-16 (Del. 2024).

[35] *Id.* at 716.

[36] *Id.*

## CONCLUSION AND VERDICT

In the midst of the CMS investigation into THI's compliance with federal law, THI saw value in adding Dr. Edgar to its Board of Directors. THI sought to leverage Dr. Edgar's experience and relationships to improve its compliance issues and to refocus THI on its health care management objectives. Dr. Edgar met the requirements of the contract. THI may not avoid compensating Dr. Edgar for her service as a Board member and efforts to assist THI in its course correction. The Court finds that THI has breached the contract it negotiated with Dr. Edgar; THI shall pay Dr. Edgar the pro-rated sum of $42,500.00 plus prejudgment interest at the statutory rate.

The parties shall prepare a form of final order of judgment consistent with this decision. That proposed form of order is to be submitted on or before May 30, 2026.

**IT IS SO ORDERED**

_____
Sean P. Lugg, Judge

16