"INDUSTRIAL AMERICA", INCORPORATED, Plaintiff Below, Appellant,

v.

FULTON INDUSTRIES, INC. and Allied Products Corporation, Defendants Below, Appellees,
and
B–H, Inc., Defendant Below.

B–H, INC., a corporation of the State of Delaware, Defendant Below, Appellant,

v.

"INDUSTRIAL AMERICA", INCORPORATED, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Oct. 21, 1971.

David A. Drexler and Richard S. Paul, of Morris, Nichols, Arsht & Tunnell, Wilmington, for "Industrial America", Inc.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for B–H, Inc., Fulton Industries, Inc. and Allied Products Corporation.

Before WOLCOTT, Chief Justice, and CAREY and HERRMANN, Associate Justices.

HERRMANN, Justice.

These appeals arise in an action for a broker's commission.

A prior opinion of this Court in the cause appears at 253 A.2d 209 to which reference is made for a statement of the basic facts. Upon remand under that opinion, the plaintiff moved to amend its complaint as to the defendant Fulton. See 253 A.2d at 215. The Trial Court denied the motion to amend and the plaintiff again appealed. Thereupon, we reversed and remanded to permit the plaintiff to amend its complaint to assert against Fulton and its successor, Allied Products Corporation (hereinafter "Allied"),[1] a cause of action based upon an alleged guaranty of Fulton to pay any broker's commission owed by B–H to the plaintiff. The guaranty was asserted upon the basis of the "Brokers fully protected" language of Fulton's Wall Street Journal advertisement here in controversy. See 253 A.2d at 211, fn. 1. Thereafter, trial was had before a jury upon the issues of procuring cause and the guaranty. Upon special interrogatories and special verdict, judgment was entered against B–H in favor of the plaintiff in the amount of $125,000., the issue of procuring cause having been decided by the jury against B–H; upon the basis of the jury's response to Interrogatory No. 4, however, judgment was entered in favor of the defendants Fulton and Allied. The plaintiff appeals from the judgment in favor of Fulton and Allied; and the defendant's cross appeal from the judgment against B–H.

I.

There were three especially pertinent special interrogatories and verdicts:

Special Interrogatory No. 2 dealt with the question of whether the "Brokers fully

---

1. The obligations of Fulton have been assumed by Allied and Fulton has been dissolved.

protected" language of the advertisement connoted a guarantee by Fulton of the plaintiff's commission:

"Did Fulton Industries, Inc., by the use of the phrase 'brokers fully protected' convey to one knowledgeable in the industrial brokerage business an offer to guarantee to pay any broker's commission which might be owed to plaintiff by Bush Hog, Inc. if plaintiff made a submission to Fulton in accordance with the terms of the advertisement and a transaction was ultimately consummated?"

To that question the jury responded in the affirmative.

Special Interrogatory No. 3 dealt with the pendency of the offer in the advertisement:

"Was the offer of guarantee of a broker's fee which by answer to Question No. 2 you found was stated in Fulton's May 1964 advertisement still in effect at the time the initial letters of Mr. Deutsch and Mr. Barkan were sent in October 1965?"

To that question, the jury likewise responded in the affirmative.

Special Interrogatory No. 4 dealt with the issue of whether Deutsch, acting for the plaintiff, relied upon the advertisement in acting as broker between B–H and Fulton:

"Did plaintiff in fact rely on Fulton's advertisement of May, 1964, in submitting the name of Bush-Hog to Fulton in October 1965?"

In this connection, the following uncontroverted facts are added to the basic facts set forth in our earlier opinion: Deutsch was given the name of Fulton as a prospect by an accountant friend at a luncheon meeting. Deutsch forthwith took from his own office files a copy of the Wall Street Journal advertisement here in controversy; then Deutsch wrote the letter to Fulton which initiated the chain of events culminating in the merger of B–H into Fulton.

To Interrogatory No. 4, the jury responded in the negative upon the following instruction:

"Any action by the plaintiff which is asserted to have been an acceptance of an offer must be found by the jury to have been intended as an acceptance in order for it to be effective in creating a contract between the plaintiff and Fulton Industries, Inc. In other words, the creation of a contract and the resulting obligations flowing therefrom depends upon action by the plaintiff which was consciously and intentionally taken for the purpose of fulfilling the terms of the advertisement at a time when the plaintiff could reasonably believe that Fulton intended and still intended that the terms of the ad would apply if plaintiff took the action invited in the advertisement.

"If, after consideration of all the evidence, you find by a preponderance of the evidence that the plaintiff had knowledge of Fulton's advertisement in October, 1965, when the first two letters were written, and that the plaintiff relied thereon and intended to respond thereto in submitting the name of Bush Hog to Fulton, you should answer Special Interrogatory No. 4 in the affirmative with the word 'yes'."

The principal question presented upon this appeal arises from Interrogatory No. 4 and the Court's instruction thereon.

II.

The basic question for decision in this appeal, in our view, is whether the plaintiff had the burden of proving a subjective intent on the part of Deutsch to accept the offer of guaranty which had been made in the advertisement by Fulton under the jury's findings.

We are of the opinion that Deutsch's subjective intent was not a relevant issue; that, rather, the relevant issues were (1) whether Fulton's offer of guaranty invited acceptance by performance;

(2) whether Deutsch knew of the offer; and (3) whether Deutsch's course of action constituted a performance amounting to an acceptance.

It is basic that overt manifestation of assent—not subjective intent—controls the formation of a contract; that the "only intent of the parties to a contract which is essential is an intent to say the words or do the acts which constitute their manifestation of assent"; that "the intention to accept is unimportant except as manifested." Restatement of Contracts, § 20; 1 Williston on Contracts (3d Ed.) § 21, p. 39, § 66, p. 213; compare Western Natural Gas v. Cities Service Gas Co., Del.Supr., 223 A.2d 379, 383 (1966); Canister Co. v. National Can Corp. (D.Del.) 63 F.Supp. 361, 365 (1945).

Where an offeror requests an act in return for his promise and the act is performed, the act performed becomes the requisite overt manifestation of assent if the act is done intentionally; i. e., if there is a "conscious will" to do it. Restatement of Contracts, § 20; 1 Williston on Contracts (3d Ed.) § 68. But "it is not material what induces the will," Restatement of the Law of Contracts, § 20, Comment (a). Otherwise stated, motive in the manifestation of assent is immaterial. There may be primary and secondary reasons or motives for a performance constituting manifestation of assent to an offer inviting acceptance by performance; and the "chief reason" or the prevailing motive need not necessarily be the offer itself. A unilateral contract may be enforceable when the promisor has received the desired service even though the service was primarily motivated by a reason other than the offer. The "motivating causes of human action are always complex and are frequently not clearly thought out or expressed by the actor himself. This being true, it is desirable that not much weight should be given to the motives of an offeree and that no dogmatic requirement should be embodied in a stated rule of law." 1 Corbin on Contracts, § 58, p. 244, § 59, p. 246. It follows that a unilateral contract may arise even though at the time of performance the offeree did not "rely" subjectively upon, i. e., was not primarily motivated by, the offer. See Simmons v. United States (4 Cir.) 308 F.2d 160 (1962); Eagle v. Smith (Del.) 4 Houst. 293 (1871); Carbill v. Carbolic Smoke Ball Co. [1893] Q.B. 256; Restatement of Contracts, § 55, Comment b (1932): " * * * contracts may exist where if the offer is in any sense a cause of the acceptor's action it is so slight a factor that a statement that the acceptance is caused by the offer is misleading."

The clear trend and development of the law in this connection is demonstrated by a proposed change in the status of Section 55 of the Restatement of Contracts (1932).[2] The development of this facet of the law of contracts became apparent in Section 55 of the 1964 Tentative Draft of Restatement of Contracts, Second.[3] A

2. Section 55 provided:
"ACCEPTANCE OF OFFER FOR UNILATERAL CONTRACT; NECESSITY OF INTENT TO ACCEPT
"If an act or forbearance is requested by the offeror as the consideration for a unilateral contract, the act or forbearance must be given with the intent of accepting the offer."

3. The Draft contains the following:
"ACCEPTANCE BY PERFORMANCE; MANIFESTATION OF INTENTION NOT TO ACCEPT
"(1) An offer may be accepted by the rendering of a performance only if the offer invites such an acceptance. (2) Except as stated in § 72, the rendering of a performance does not constitute an acceptance if within a reasonable time the offeree exercises reasonable diligence to notify the offeror of nonacceptance. (3) Where an offer of a promise invites acceptance by performance and does not invite a promissory acceptance, the rendering of the invited performance does not constitute an acceptance if before the offeror performs his promise the offeree manifests an intention not to accept."

comparison of the 1932 and the 1964 versions of Section 55 indicates that under the currently developing rule of law, an offer that invites an acceptance by performance will be deemed accepted by such performance unless there is a manifestation of intention to the contrary. See 1 Williston on Contracts (3d Ed.) § 67. Thus, in the establishment of a contractual obligation, the favored rule shifts the emphasis away from a manifestation of intent to accept to a manifestation of intent not to accept; thereby establishing, it would appear, a rebuttable presumption of acceptance arising from performance when the offer invites acceptance by performance. See Braucher, Offer and Acceptance in Second Restatement, 74 Yale L.J. 302, 308 (1964). The law thus rightfully imputes to a person an intention corresponding to the reasonable meaning of his words and deeds.

■ The defendants contend that, because an offer of guaranty is here involved, the issue is whether the plaintiff gave to Fulton the necessary notice of acceptance of the offer, citing 1 Williston on Contracts (3d Ed.) § 69AA, p. 223. The position is untenable in the light of the following portion of the *Williston* statement upon which the defendants rely:

> "Ordinarily there is no occasion to notify the offeror of the acceptance of such an offer, if the doing of the act is sufficient acceptance, and the promisor knows that he is bound when he sees that action has been taken on the faith of his offer. * * *."

See also Restatement of Contracts, § 56 (1932); 1 Corbin on Contracts, § 68, f. n. 91. The facts of this case meet the test. In this connection, the Trial Judge ruled that Fulton's knowledge of the plaintiff's submission of B–H's name to it was notice to Fulton of an act constituting acceptance of its offer. We concur in that ruling.

Applying the law we find applicable to the facts of this case: we conclude that the Trial Court erred in submitting the issue of subjective reliance to the jury under Interrogatory No. 4. We hold that there was no relevant issue of fact as to the plaintiff's subjective reliance upon Fulton's offer. As a matter of law, it appears unquestionable that Fulton's offer invited acceptance by performance; it is uncontroverted that Deutsch knew of the offer at the time of performance; by the jury's finding of procuring cause, it has been established that the plaintiff did in fact and in law perform. It follows as a matter of law, in the absence of any manifestation of intention to the contrary, that the plaintiff's performance constituted an acceptance of the offer of Fulton which was found by the jury to be an offer of guaranty outstanding and viable at the time of the performance.

The necessary result of the foregoing chain is that the plaintiff is entitled to judgments against Fulton and Allied as a matter of law upon the basis of the judgment against B–H, unless there is validity in any of the grounds of the defendants' appeals herein.

### III.

We find no merit in any of the grounds of the defendants' appeals:

The defendants contend that the Trial Court erred in connection with the trial of the issue of procuring cause (1) in limiting the defendants' cross-examination of the plaintiff's expert witnesses; (2) in the jury charge on the "exclusion" of the plaintiff from the negotiations; and (3) in failing to charge the jury as requested on "substantial break in the negotiations". Upon due consideration of those contentions, we have concluded that there was no reversible error as to any.

The defendants also contend that there was insufficient evidence to support the jury's finding of a guaranty by Fulton to pay any broker's commission owed by B–H to the plaintiff. Upon due consideration of that contention, we have concluded that it is unmeritorious.

Finally, the defendants contend that the Trial Court erred in failing to let the jury

decide whether the plaintiff's performance in submitting the Bush-Hog name to Fulton was responsive to Fulton's advertisement for "product lines". We find no reversible error in the Trial Judge's ruling that there was no jury issue presented in this connection.

\* \* \* \*

Accordingly, upon the bases of the jury's answers to the special interrogatories and of the conclusions we have reached herein, we conclude that as a matter of law the plaintiff is entitled to judgments against Fulton and Allied as well as against B–H upon the verdict of $125,000. The cause is remanded for further proceedings consistent herewith.