IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTINE TREXLER and<br>BARRY TREXLER, wife and<br>husband, | § <br> § <br> § <br> § | No. 602, 2016 |
| Plaintiffs Below,<br>Appellants, | § <br> § <br> § | Court Below—Superior Court<br>of the State of Delaware |
| v. | § <br> § | C.A. No. N15C-08-131 |
| MARGARET BILLINGSLEY and<br>DAVID BILLINGSLEY, | § <br> § <br> § <br> § | |
| Defendants Below,<br>Appellees. | § <br> § | |

Submitted:  June 7, 2017
Decided:  June 21, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## **ORDER**

This 21st day of June, 2017, having considered the briefs and the record below, it appears to the Court that:

(1)  Margaret Billingsley ran into the back of Christine Trexler's car. Trexler retained counsel, and over the course of several months, Trexler's counsel continually demanded that Billingsley's insurer pay out the policy limits to settle the case. After Billingsley and her insurer finally agreed to settle Trexler's claims by paying policy limits, Trexler apparently got cold feet, and insisted that her attorney

claim that her offers to settle for policy limits were only solicitations of offers. Thus, according to Trexler, she reserved the right to refuse any offer made by Billingsley.

(2) The Superior Court held that the attorneys for the parties had reached a binding agreement to settle Trexler's personal injury claim for policy limits. On appeal, Trexler reiterates the same argument made in the Superior Court—the final offer Trexler's attorney made to settle the case was not an offer that could be accepted. Instead, it was a solicitation of an offer which allowed Trexler to have the final say on acceptance. We agree with the Superior Court that the parties reached a binding agreement to settle the dispute without further approval by Trexler. Thus, we affirm the Superior Court's decision.

(3) On September 6, 2013, Billingsley, a student at Charter School of Wilmington, was driving home from school. Trexler, who was picking up her daughter from the school, was driving in front of her. Billingsley, distracted by the students walking around her car, hit Trexler's car which was stopped in front of her. According to Trexler, she suffered severe injuries as a result of the impact and required cervical fusion surgery. Billingsley had an automobile liability insurance policy with State Farm Mutual Automobile Insurance Company with policy limits of $100,000.

(4)     Trexler filed a personal injury claim in the Superior Court.  On February 17, 2016, Trexler's counsel made a demand by email under 6 *Del. C.* § 2301(d)[1] stating:

> I attach a medical bill itemization and alien notice.  The Itemization exceeds the available liability coverage.  This is our demand for the policy limits.  It is a thirty demand under 6 del.C. 2301(d).
> Please advise if you need anything else.  Thanks.[2]

Billingsley's counsel forwarded the demand to State Farm for its review.  On April 18, 2016, Trexler's counsel sent Billingsley's counsel a follow-up email:

> Per your request, I am attaching the bill from Pennsylvania Hospital.  This is part of the lien which was already sent to you some time ago.  These bills are monumentally hard to get.
>
> I had already provided a time limit demand for the policy limits.  The case seems clear.  Liability is clear.  The bills exceed the policy limits and there are no known contributory events to the issue of causation.  Please advise if the limits will be offered and I can then consult with my client to see if she will accept the same.  Thanks.[3]

(5)     On May 11, 2016, Trexler's counsel sent Billingsley's counsel another email asking "What's happening?"[4]  Billingsley's counsel responded the next day

---

[1] Under 6 *Del. C.* § 2301(d) (emphasis added):
> In any tort action for compensatory damages in the Superior Court or the Court of Common Pleas seeking monetary relief for bodily injuries, death or property damage, interest shall be added to any final judgment entered for damages awarded, calculated at the rate established in subsection (a) of this section, commencing from the date of injury, *provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.*

[2] App. to Opening Br. at 107 (errors in original).

[3] *Id.* at 108 (errors in original).

[4] App. to Answering Br. at 40.

saying that she had left a message for the insurance adjuster, and that she would call him after she spoke with the adjuster. On May 18, 2016, Trexler's counsel sent Billingsley's counsel another email stating: "The deadline to offer to tender the policy Is this Friday (5/20). After that, I will recommend that my client move the matter to trial and seek an excess verdict."[5] On May 20, 2016, Billingsley's counsel wrote back: "[T]he carrier for the defendant Billingsley has confirmed settlement of the case for the defendant's $100,000 liability limits. The settlement check and release are being prepared."[6] Trexler's counsel and Billingsley's counsel spoke on the phone later that day, though the substance of that conversation is unclear.[7]

(6)   On May 31, 2016, Trexler's counsel wrote back, "I'm waiting on client's authority to accept the offer. I should know within a day or two."[8] Billingsley's counsel replied the same day, "Since we made the payment within the time you noted in your last demand, the case should be settled. I have requested the draft from the client. I will wait to hear from you."[9] Sometime thereafter, Trexler's counsel informed the court that the case had settled. On June 3, 2016, the court sent a letter to the parties stating:

---

[5] App. to Opening Br. at 109 (errors in original).

[6] *Id*. at 110. Billingsley's counsel's partner, Thomas Leff, Esquire, sent the email on counsel's behalf.

[7] Trexler's counsel spoke to Mr. Leff. Mr. Leff remembers speaking with Trexler's counsel, but does not recall the content of the conversation. Other than Trexler's counsel's affidavit, there is no information regarding the content of the conversation.

[8] *Id*. at 111.

[9] App. to Answering Br. at 43.

This letter is a confirmation that the Court has been notified by the Plaintiff or Plaintiff's Counsel in the above referenced case that the parties have settled this matter as to all claims and all parties. In order for the Court to close its file, a "Stipulation of Dismissal" must be filed. If a stipulation of dismissal, or a letter stating the status of this matter, is not filed with the Court within thirty (30) days of the date of this letter, the Court will dismiss the action with prejudice.[10]

(7)    On June 6, 2016, Billingsley's counsel mailed Trexler's counsel the $100,000 settlement check, a stipulation of dismissal, and a general release.[11]  On June 21, 2016, Billingsley's counsel also provided Trexler's counsel with an affidavit stating that Billingsley had no other insurance, which Trexler's counsel had requested.  On July 12, 2016, the court entered an order dismissing the case with prejudice.  The same day, Trexler's counsel wrote a letter asking the court not to dismiss the case, claiming that his client was still deciding whether to settle the case or to continue with litigation.[12]

(8)    Billingsley filed a motion to enforce settlement.  Trexler argued that she had not yet accepted Billingsley's settlement offer.  According to Trexler,

---

[10] *Id*. at 45.

[11] Trexler's counsel did not cash the check or execute the documents.  On September 12, 2016, Trexler returned the settlement check and accompanying releases to Billingsley.

[12] *Id*. at 54:

> I write to ask that the case not yet be dismissed as my client is still deciding whether to settle the case or continue with litigation.  I did call your office on Friday to advise of the situation and was told to send a letter.  This is the letter but it looks like the dismissal was inadvertently entered before this letter arrived.
>
> I do expect that the case will be settled and resolved but, prior to doing so, my client wanted to consider her options.  Consequently, I am not yet [able] to report to the Court that we have reached a resolution.  I expect we will get there but we have not yet.

5

although her counsel's February email was an unconditional settlement offer, Billingsley failed to accept within the given thirty-day time period. Trexler claimed that the other emails were only invitations for Billingsley to make an offer, and thus Billingsley's decision to tender policy limits was the actual offer which Trexler had not yet accepted.

(9) The Superior Court held, however, that Trexler had extended the time for Billingsley to accept her February offer in counsel's April and May emails, and thus when Billingsley accepted the offer on May 20, a binding and enforceable contract was formed. The court relied on Trexler's repetition of the offer several times, and that Trexler's final offer threatened trial if Billingsley did not accept within two days' time. Thus, according to the court, "a reasonable negotiator would have understood the February e-mail and those that extended it and repeated it were all offers that could be accepted within the time limits given."[13] This appeal followed.

(10) Trexler raises the same argument on appeal that she asserted below: that her counsel's emails are not offers in themselves, but rather only requests for an offer. We review the Superior Court's determination of whether a valid settlement agreement exists *de novo*.[14]

---

[13] App. to Opening Br. at 57.

[14] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010); *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010) ("Settlement Agreements are contracts and Delaware courts examine them under well-established law surrounding contract interpretation.").

6

(11)  A valid contract requires an offer, acceptance, and consideration, and the parties must have intended that the contract would bind them.[15]  To determine whether a contract was formed, the court must examine the parties' objective manifestation of assent, not their subjective understanding.[16]  Further, voluntary settlements are highly favored and will be enforced whenever possible.[17]  In determining whether a settlement agreement has been reached, we ask:

> [W]hether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations and formed a contract.[18]

(12)  It is not seriously disputed that Trexler's February email was an offer. But, by its explicit terms, the offer expired thirty days from the date the email was sent, and Billingsley did not accept within that time period.  The Superior Court found that Trexler extended her February offer in counsel's April and May emails. We see counsel's April email differently than the Superior Court.  In our view, the April email did not extend Trexler's February offer because the April email

---

[15] *See Osborn ex rel. Osborn*, 991 A.2d at 1158; *Indus. Am., Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 414 (Del. 1971); *Hughes v. Frank*, 1995 WL 632018, at *3 (Del. Ch. Oct. 20, 1995).  Further, under the Delaware Uniform Electronic Transaction Act, if a valid contract is formed, it is of no consequence that the contract is in electronic form. *See* 6 *Del. C.* § 12A-107.

[16] *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004), *aff'd*, 867 A.2d 903 (Del. 2005) (quoting *Indus. Am., Inc.*, 285 A.2d at 415).

[17] *E.g.*, *Kahn v. Sullivan*, 594 A.2d 48, 58 (Del. 1991); *Rome v. Archer*, 197 A.2d 49, 53 (Del. 1964); *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1042 (Del. Ch. 2015); *Brinckerhoff v. Tex. E. Prods. Pipeline Co., LLC*, 986 A.2d 370, 384 (Del. Ch. 2010).

[18] *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986).

explicitly conditioned Billingsley's acceptance on his client's approval of the settlement. That condition renders the contract illusory.[19]

(13)   But, we agree with the Superior Court's ultimate conclusion because Trexler's May 18 email was in fact an offer. Counsel's May 18 email did not condition acceptance on his client's approval. Rather, given the "course and substance of the negotiations,"[20] a reasonable negotiator would understand the email to be Trexler's final offer to settle if Billingsley agreed to tender the policy limits previously demanded by Trexler within two days' time.[21] Over the course of the negotiations, Trexler continually demanded Billingsley tender her policy limits and frequently requested status updates on whether she would do so. The mere fact that Trexler used the word "offer" in the email to characterize Billingsley's acceptance does not make it so. As the Superior Court held, Trexler's counsel was most likely "using the term offer more colloquially, that is, pay up the policy limits, rather than the legal term of art that offer sometimes can carry."[22]

(14)   The parties' actions following the deal are also informative.[23] Trexler's counsel apparently told the court that the case was settled, and in its June 3 letter,

_____

[19] "[A] condition of subsequent approval by the promisor in the promisor's sole discretion gives rise to no obligation." 1 Williston on Contracts § 4:27 (4th ed. 2016).
[20] *See Leeds*, 521 A.2d at 1102.
[21] *Restatement (Second) of Contracts* § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.").
[22] App. to Opening Br. at 57.
[23] *See Restatement (Second) of Contracts* § 202 cmt. g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."); 17A C.J.S. *Contracts* § 427 ("A party's conduct may be evidence of its intent . . . so long as that conduct

8

the court warned that the case would be dismissed in thirty days if the parties did not act. Trexler did not dispute the existence of a binding settlement until the court dismissed the case with prejudice on July 12, 2016.[24] Further, Billingsley sent Trexler a settlement check on June 6, 2016, which Trexler did not return until September 12, 2016. Although these actions suggest that Trexler may have regretted her decision to settle, "our law does not relieve [her] of the burden of those decisions simply because of [her] after-the-fact regrets. To do so would greatly undermine the utility of contracts . . . ."[25]

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

evinces an interpretation contrary to that party's interest."); *but see Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties . . . .").

[24] Trexler may have also called the court's chambers on Friday, September 8, 2016, but even if it did, it was passed the court's thirty-day deadline.

[25] *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 748 (Del. Ch. 2004).