## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALATUS AEROSYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-12-038 EMD CCLD |
| | ) | |
| TRIUMPH AEROSTRUCTURES, LLC | ) | |
| and TRIUMPH AEROSTRUCTURES – | ) | |
| TULSA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: September 27, 2021
Decided: December 27, 2021

*Upon Plaintiff's Motion to Enforce Settlement Agreement, Motion to Dismiss Defendants'
Counterclaims, and Request for Attorneys' Fees*
***DENIED***

John L. Reed, Esquire, Kelly L. Freund, Esquire, DLA Piper LLP, Wilmington, Delaware;
Benjamin D. Schuman, Esquire, Harry P. Rudo, Esquire, DLA Piper LLP, Baltimore, Maryland.
*Attorneys for Plaintiff Alatus Aerosystems.*

Joelle E. Polesky, Esquire, Stradley Ronon Stevens & Young, LLP, Wilmington, Delaware;
Michael D. O'Mara, Esquire, Joseph T. Kelleher, Esquire, Stradley Ronon Stevens & Young
LLP, Philadelphia, Pennsylvania. *Attorneys for Defendants Triumph Aerostructures, LLC and
Triumph Aerostructures – Tulsa, LLC.*

**DAVIS, J.**

## I.      INTRODUCTION

This is a breach of contract case assigned to the Complex Commercial Litigation

Division of the Court.  Plaintiff Alatus Aerosystems ("Alatus") filed this action alleging breach

of contract against Defendants, Triumph Aerostructures, LLC and Triumph Aerostructures –

Tulsa, LLC (together, the "TAS Companies").  The TAS Companies filed their Answer,

Affirmative Defenses, and Counterclaims.

Alatus has filed a motion to enforce a settlement agreement, dismiss the TAS Companies' counterclaims and for attorneys' fees (the "Motion"). Alatus contends that the TAS Companies agreed to a settlement and asks the Court to enforce that settlement. The TAS Companies opposed the Motion. The Court held a hearing on the Motion on September 27, 2021. At the conclusion of the hearing, the Court took the Motion under advisement. For the reasons set forth below, the Motion is **DENIED**.[1]

## II.     RELEVANT FACTS

On August 22, 2018, Alatus and the TAS Companies entered into an agreement entitled as the Contract Manufacturing Agreement (the "CMA").[2] Under the CMA, Alatus would provide certain products to the TAS Companies.[3] The TAS Companies would then incorporate these products into aerospace structures the TAS Companies fabricated and assembled for original equipment manufacturer customers.[4]

On April 3, 2020, Alatus sent a letter to the TAS Companies giving notice of a Force Majeure Event under Section 23.21 of the CMA.[5] The letter states that "[d]ue to the ongoing COVID-19 pandemic, Alatus is presently unable to perform its obligations to the [TAS] Companies under the CMA."[6] Alatus has not rescinded its invocation of the Force Majeure Event, but the CMA remains in effect and the parties continue to perform under it.[7]

---

[1] The Court's finding on the first form of relief—the request to enforce a settlement—guides the Court's decisions on the TAS Companies' counterclaims and the request for attorneys' fees and costs. This Decision only addresses the first question. The Court is denying the Motion as to enforcing the settlement so the Court will not (i) dismiss the counterclaims and (ii) award attorneys' fees and costs.

[2] Compl. ¶¶ 10-12.

[3] *Id*. ¶ 13; Defendants' Brief in Opposition to Plaintiff's Motion to Enforce Settlement Agreement, Motion to Dismiss Defendants' Counterclaims, and Request for an Award of Attorneys' Fees, at 6 (hereinafter referred to as "Opp.").

[4] *Id*.

[5] Compl. ¶ 18.

[6] *Id.*

[7] *Id.*

In the fall of 2020 Alatus and the TAS Companies, together with their respective counsel, commenced negotiations regarding their disagreements (i) relating to the CMA and (ii) other non-CMA-related matters.[8] The parties were represented by counsel during the negotiations— Stephen Ballas, of DLA Piper, for Alatus and Frederick V. Geisler, in-house counsel, for the TAS Companies.[9] On October 1, 2020, Mr. Geisler and TAS Companies executives met in person with Alatus and its counsel to discuss a global settlement of the parties' disputes.[10] After a series of proposals and counterproposals, the parties failed to reach an agreement on October 1, 2020. Based on the discussions that day, however, Mr. Geisler prepared a draft settlement agreement and sent it to Mr. Ballas on October 9, 2020.[11]

Between October 12, 2020, and October 16, 2020, Alatus did not comply with its delivery obligations and the TAS Companies canceled certain deliverables under Purchase Orders previously submitted to and accepted by Alatus.[12] During the months of October and November, the parties continued to negotiate.[13] On November 24, 2020, after subsequent meetings and negotiations, Mr. Ballas sent a counterproposal to Mr. Geisler.[14]

After failing to come to an agreement, Alatus filed the Complaint on December 3, 2020.[15] Even after the filing of the Complaint, the parties continued to negotiate. On December 18, 2020, the TAS Companies, requested to extend the deadline to respond to Alatus's Complaint "in light of the current settlement negotiations and the upcoming holidays" to January 19, 2021.[16]

---

[8] *Id.* ¶ 19.
[9] Opp. at 7.
[10] *Id.*
[11] *Id.* at 8.
[12] Answer ¶ 20.
[13] Compl. ¶¶ 21-26.
[14] Opp. at 8.
[15] D.I. No. 1.
[16] Opp. at 9; Declaration of Joseph T. Kelleher (hereinafter "Kelleher Decl.") ¶ 6, Ex. A.

Alatus agreed.[17]  On January 18, 2021, the TAS Companies requested a further extension stating

"I understand that our clients are working to settle this matter."[18]  Alatus also agreed to this

request.[19]  On January 29, 2021, the TAS Companies filed their Answer, Affirmative Defenses,

and Counterclaims of Defendants (the "Answer").[20]

The following outlines the purported communications and status of the negotiations after

the commencement of the Complaint:[21]

- *December 10, 2020: 11:11 a.m.*: Email from Mr. Geisler to Mr. Ballas in which the parties' disputes would be "best resolved through a negotiated settlement" and set forth the details of a proposed purchasing framework, noting that the terms were "subject to agreement on the definitive terms of a settlement agreement."

1. The TAS Companies agree to pay Alatus open accounts receivables valued at $3.5 million as of 12/2/20 upon execution of a settlement agreement.

2. The TAS Companies will purchase $3.456 million of additional parts identified on the attached excel spreadsheet from Alatus, with payment due ten days after delivery of all parts in category 2 and 3.
    a. $2.056 million is past/due by 12/31/20
    b. $1.399 million is due between Jan – March 2021

3. The TAS Companies will also purchase the parts identified on the tab "WIP Items – Buy as Finished Goods" with the approximate value of $37k upon Alatus' completion of those parts which are currently identified as WIP. Payment due ten days after delivery of all parts in category 2 and 3.

4. The TAS Companies will purchase the raw materials identified in Alatus' November 25, 2020 spreadsheet (which identifies those goods as having a value of $2.713 million) for the sum of $2.713 million, with payment due ten days after delivery of all of the raw material to the TAS Companies. If less than the full amount of the raw material identified on Alatus' November 25 spreadsheet is delivered, the price will be reduced accordingly.[22]

- *December 10, 2020: 6:48 p.m.*: Email from Mr. Ballas to Mr. Geisler in which Mr. Ballas proposed the following changes to the email sent earlier that day and adds two terms.

[17]Opp. at 9.
[18] Kelleher Decl., ¶ 7, Ex. B.
[19] *Id.*
[20] D.I. No. 6.
[21] Unless indicated otherwise, the series of these emails appear in the Declaration of Stephen Ballas (hereinafter "Ballas Decl.") (Exs. A-G).
[22] Ballas Decl. at Ex. B.

4

1.  Notes that the terms are acceptable to Alatus and states to "See also #4 below for the additional payment due upon execution of the settlement agreement."

2.  Notes that the terms are acceptable to Alatus, "except that (1) delivery is FOB Alatus and (2) the $3.456M must be delivered (upon execution of the settlement agreement) into an escrow with DLA Piper for Alatus to draw upon as and when it delivers (FOB Alatus) the parts. See also #3 below for the additional $37k to go into this escrow."

3.  Notes that the terms are acceptable to Alatus "except that (1) delivery is FOB Alatus and (2) the $37k must be delivered (upon execution of the settlement agreement) into the escrow in #2 above, for Alatus to draw upon as and when it delivers (FOB Alatus) the parts."

4.  Notes that the terms are acceptable to Alatus "except that (1) the purchase price for these materials is $3M (flat) and (2) delivery is FOB Alatus. Because it is FOB Alatus, Triumph may arrange for pickup at any time, such that Alatus expects this payment together with the payment in #1 above upon execution of the settlement agreement."

5.  "[The TAS Companies] cannot place any new orders under the CMA, and the CMA terminates entirely upon the last delivered order in #2 and #3 above."

6.  Full mutual releases of all claims.

7.  Mr. Ballas specifies that the offer expires at 5pm Pac on Friday 12/11/2020 and is subject to a definitive settlement being signed up by 12/31/2020.[23]

- *December 28, 2020: 8:36 p.m.*: Email from Mr. Ballas to Mr. Geisler which includes a settlement proposal to the TAS Companies that states "Here is Alatus's response to your last settlement proposal and our follow-up conversation on this topic on 12/11. Note that:

  1.  I believe this conforms in all material respects to our 12/11 discussion.

  2.  We have accommodated your inspection/validation as well as cash-timing needs.

  3.  To bring the total settlement value to $10m, we are including within the sale Alatus's tooling used in Triumph's programs.

  This is in lieu of your offer to include an extra $300k in POs.

  We want to sign up the settlement agreement in 2020, even if Triumph doesn't fund the escrow with DLA until a few days later. To that end, I will proceed to revise

---

[23] *Id.*

the draft settlement agreement that you sent me on 10/9/20 to conform to this proposal. I will send that thru to you in the next day.[24]

- *January 5, 2021: 1:18 p.m.*: Email from Mr. Ballas to Mr. Geisler with a new draft settlement agreement and wrote:

  "Further to my email last week: We have now drafted the accompanying settlement agreement that matches our most recent writeup. See attached. I used your prior draft settlement agreement as my starting point, but I obviously reworked it to reflect a substantially different business deal. Given this, I don't think a blackline is helpful and so haven't attached one.

  What is your ETA to discuss and advance this?"[25]

- *January 7, 2021: 3:07 p.m.*:[26] Email from Mr. Ballas to Mr. Geisler that relays Alatus's position on four unresolved points raised by the TAS Companies on a phone call earlier the same day: (1) tooling; (2) partially finished raw materials; (3) raw materials still on order; and (4) an escrow arrangement for open orders.[27]

- *January 13, 2021: 2:45 a.m.*:[28] Email from Mr. Ballas to Mr. Geisler with additional in-line comments regarding Alatus's position on points addressed in his January 7, 2021 email. The in-line comments include multiple requests for lists and more information. The email reads:

  "Further to our discussion earlier today, see CAPS BELOW. I've tried to capture both the [TAS Companies] proposal as well as the Alatus response.

  I believe we are now agreed in principle on all material points, subject to the parties' signing a definitive settlement agreement reflecting all of this. What is your ETA to review and revise the draft settlement agreement that I previously sent thru?"[29]

- *January 13, 2021: 2:27 p.m.*: Email from Mr. Geisler to Mr. Ballas that responds and states that he was "tied up today but will endeavor to get to it tomorrow and get something back to you by either Friday or Monday."[30]

- *January 13, 2021: 2:46 p.m.*: Email from Mr. Ballas to Mr. Geisler about thirty minutes after receiving the email stating that Mr. Geisler was tied up and asked for clarification writing:

---

[24] *Id.*

[25] *Id.*

[26] Although not significant to the present matter, the Court notes that in Ballas Decl., Ex. B this email is timestamped for 6:07 AM while in Ballas Decl., Exs. C-F this email is timestamped for 3:07 PM.

[27] Ballas Decl., Ex. B.

[28] Also not significant to the present matter, the Court notes that in Ballas Decl., Ex. C this email is timestamped for 3:45 AM while in Ballas Decl., Exs. D-F this email is timestamped for 2:45 AM.

[29] Ballas Decl., Ex. C.

[30] Ballas Decl., Ex. D.

"Ok, will stand by. Point of clarification btw, which has always been the intent from our perspective. But, I want to make sure no disconnects on it.

That is, this settlement is the 'global resolution' of all pending disputes and outstanding payments owed back and forth as between the parties. By this, I mean that the settlement supersedes/wipes out all Alatus AR that Triumph owes Alatus, and also wipes out all Alatus AP that Alatus owes Triumph.

Is that your understanding as well?"[31]

- *January 13, 2021: 2:58 p.m.*: Email from Mr. Geisler to Mr. Ballas less than ten minutes later stating: "Yes."[32]

- *January 21, 2021: 5:59 p.m.*: Email from Mr. Geisler to Mr. Ballas with TAS Companies' counterproposal set forth in a new draft settlement agreement.[33] The main way this proposal varied from previous agreements was that it conditioned the release of the TAS Companies' claims against Alatus upon Alatus's completion of deliveries of products to the TAS Companies.

Counsel from both parties spoke on the phone about the counterproposal the next day.[34]

- *January 22, 2021: 5:01 p.m.*: Email from Mr. Ballas to Mr. Geisler noting several ways in which the revised settlement varied from previous drafts and the conditions Alatus had to continue to work on the settlement, noting that in the absence of a response by the following Monday, Alatus would resume its efforts in the Delaware litigation.[35] The email states in part:

  1. Your revised Settlement Agreement varies in several material respects from the parties' agreement in principle. That's frustrating and wasted weeks of Alatus's time. Alatus also agreed to postpone the Delaware litigation based on the understanding that there was already agreement in principle. A few examples where your new proposal deviates:

     a. The mutual releases were to be effective immediately. You have now restructured it such that Alatus's release of Triumph is effective immediately, whereas Triumph's release of Alatus is effective only when Alatus delivers the last remaining order.

     b. The releases were to be fulsome in both directions, i.e., 'anything and everything' was to be released. Although your drafting isn't totally clear

---

[31] Ballas Decl., Ex. E.
[32] Ballas Decl., Ex. F.
[33] Declaration of Frederick V. Geisler (hereinafter "Geisler Decl."), Ex. 5.
[34] Geisler Decl. ¶ 21.
[35] Ballas Decl., Ex. G.

to me, the release now appears limited to the CMA, the M&A agreement, the G650 LTA (but only the two remaining spar obligations) and the discrete list of disputes relating to those items (e.g., the working-capital dispute, the tax disputes, the Fives dispute, etc.). Also, all AR/AP between the parties – in both directions - was to be wiped out, per our email exchange on this topic.

2. That said, we will work with your new proposal in the interests of resolving this. But, before we commit further time to this endeavor, please confirm your agreement in principle to the following: . . .

3. *We need a response from you on #2 above by 8am Pacific on Monday morning. After that, we will resume our efforts on the Delaware litigation.* In the meantime, Alatus is reviewing your Excel item by item to confirm it/provide the delivery dates, and is also pulling the POs for all raw materials on order per your request.[36]

The TAS Companies did not respond to Alatus's demand. The TAS Companies, a week later, filed the Answer.

After the TAS Companies filed the Answer, the parties continued to discuss settlement terms and exchanged further competing proposals, but failed to come to any agreement.[37] On May 27, 2021, the TAS Companies sent a notice of termination and notice of setoff, asserting that they had a right to terminate the CMA for cause.[38] On June 4, 2021, Alatus responded to the TAS Companies termination letter and argued that: (i) the parties had reached a binding settlement agreement in January 2021, and (ii) the TAS Companies had breached the settlement agreement and were not entitled setoff.[39]

On June 23, 2021, Alatus filed the Motion.[40]

---

[36] *Id*. (emphasis added).
[37] Kelleher Decl., Ex. C, Ex. D, Ex. E.
[38] Kelleher Decl., Ex. F (5/27/2021 Notice of Termination).
[39] Kelleher Decl. Ex. G.
[40] D.I. No. 7.

8

### III. PARTIES' CONTENTIONS

#### A. THE MOTION

Alatus argues three main points.  First, Alatus contends that the settlement agreement's terms are those contained in the draft settlement agreement sent by Plaintiff to Defendants on January 5, 2021, as modified by the parties' discussions between January 5, 2021, and January 13, 2021 (collectively, the "January 2021 Agreement"), and that the Court should enforce that agreement.  Alatus claims that the January 2021 Agreement contained all material terms and as such was immediately binding.  Second, Alatus asks the Court to dismiss the Answer with prejudice because of the January 2021 Agreement.  Third, Alatus, argues that  the Court should award attorneys' fees and costs to Alatus related to the filing and prosecution of the Motion.

#### B. THE OPPOSITION

The TAS Companies assert that the parties did not reach a binding settlement agreement in January 2021.  The TAS Companies contend that the parties did not intend to be bound for two main reasons.  The TAS Companies claim that the contemporaneous and subsequent negotiations demonstrate a lack of assent to be bound.  The TAS Companies additionally argue that the settlement was contingent on the execution of a written agreement.  The TAS Companies, therefore, assert that Alatus has no basis to seek dismissal of the Answer.

### IV. DISCUSSION

#### A. LEGAL STANDARD

"Delaware courts favor the negotiated settlement of contested legal disputes and enforces them as contracts."[41]  "Whether or not a settlement agreement was reached is a fact intensive

---

[41] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, 2020 WL 1972857 at *5 (Del. Super. Apr. 23, 2020) (citing *Clark v. Ryan*, 1992 WL 163443, at *5 (Del. Ch. June 12, 1992)).

inquiry."[42]  "Settlement agreements are binding where the parties agree to all the material terms and intend to be bound by that contract, whether or not the contract is in writing."[43]

"A party seeking to enforce a purported agreement has the burden of proving the existence of a contract by a preponderance of the evidence."[44]  In determining if the movant has met its burden, the Court must ask:

> whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations and formed a contract.[45]

"Under Delaware law, determining whether the parties reached a binding contract to settle requires an examination of the parties' overt manifestations of assent."[46]  "It is this objective manifestation that controls the question of whether an agreement was reached on all material terms."[47]

## B. THE COURT FINDS THAT THE JANUARY 5-13 EMAILS AND OFFER DID NOT CONTAIN ALL OF THE TERMS ESSENTIAL TO AN AGREEMENT

Alatus contends that no material terms were in dispute after the January 13, 2021 email sent at 2:45 a.m.  Alatus notes that this email included in-line responses to the January 7, 2021 email.  Alatus argues that conversations capturing both parties concerns about tooling, partially finished raw materials, raw materials still on order, and escrow for open orders were all settled and agreed to based on the parties' communications.  Most importantly, Alatus claims that the parties agreed to full mutual releases and that these releases would be effective immediately.

[42] *Delphi*, 2020 WL 1972857 at *2.
[43] *Id.* at *5 (citing *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010)).
[44] *Id.* (citing *Schwartz*, 2010 WL 2601608 at *4).
[45] *Schwartz*, 2010 WL 2601608, at *4 (quoting *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986)).
[46] *Delphi*, 2020 WL 1972857, at *6 (citing *Schwartz*, 2010 WL 2601608, at *4).
[47] *Id.* (citing *Spacht v. Cahall*, 2016 WL 6298836, at *2 (Del. Super. Oct. 27, 2016)).

The TAS Companies disagree and assert that open issues remained, including final disposition of tooling and raw material, the escrow arrangement for open orders, and the timing and conditions of the parties' releases. The TAS Companies rely on their email communications to demonstrate the parties' disagreement on these material issues. The TAS Companies argue that agreement on these issues, particularly the timing and conditions of releases, were essential to any settlement as it was necessary to compel Alatus's performance and ensure the TAS Companies could meet its obligations to its customers. The TAS Companies further contend that Mr. Ballas's emails stating that immediate mutual releases were a contingency of the deal, demonstrates the materiality of the releases.

Under Delaware law for a settlement agreement to be binding, the parties must have agreed to all material terms and intend to be bound by the agreement.[48] In *Leeds v. First Allied Connecticut Corp.*, the Court of Chancery held that despite the presence of agreement in a signed letter on major terms of the sale of a business and its associated real estate, no contract was formed.[49] Specifically, the Court of Chancery noted that "there are myriad topics and terms utterly conventional when a commercial seller in a significant transaction takes back a note" that were not present in the purported agreement.[50] *Leeds* is instructive on the question of when negotiations are complete and a contract has formed. The Court of Chancery explains:

> Until it is reasonable to conclude, in light of all of the [] surrounding circumstances, that all of the points that the parties themselves regard as essential have been expressly or (through prior practice or commercial custom) implicitly resolved, the parties have not finished their negotiations and have not formed a contract."[51]

---

[48] *Delphi*, 2020 WL 1972857, at *2.
[49] *Leeds*, 521 A.2d at 1102-03.
[50] *Id.* at 1103.
[51] *Id.* at 1102.

Just as in *Leeds*, the Court finds that there are missing terms which indicate that negotiations were not complete and that a contract had not been formed during the January 5-13 communications.

Alatus points to the January 5, 2021, written agreement which states "hereby jointly and severally immediately releases and forever discharges" for support of the conclusion that the parties agreed on that term. Further, Alatus notes that it was over a week, on January 21, 2021, when they were first aware that the TAS Companies had taken an alternative position on this point. However, in Mr. Ballas's January 13, 2021 2:45 a.m. email, Mr. Ballas notes that "FINALLY, YOU SAID EARLIER THAT ALATUS IS ALREADY PAST DUE ON SOME OPEN ORDERS, AND THAT YOU NEEDED A NEW 'COMMITTED DELIVERY DATE' FROM ALATUS ON THOSE ORDERS. PLEASE PROVIDE THIS LIST OF ORDERS AS DISCUSSED, AND ALATUS WILL THEN PROVIDE THE NEW COMMITTED DELIVERY DATES."[52] This sentence indicates that Alatus was aware of the TAS Companies concerns regarding past due orders and that this term of the agreement was outstanding. Additionally, when the TAS Companies sent their counterproposal on January 21, 2021, Mr. Ballas responds on January 22, 2021, noting that:

> Your revised Settlement Agreement varies in several material respects from the parties' agreement in principle. . . . A few examples where your new proposal deviates:
>
> a. The mutual releases were to be effective immediately. You have now restructured it such that Alatus's release of Triumph is effective immediately, whereas Triumph's release of Alatus is effective only when Alatus delivers the last remaining order. . .[53]

---

[52] Ballas Decl., Ex. C.
[53] Ballas Decl., Ex. G.

12

This email, and the TAS Companies counterproposal, demonstrate that the TAS Companies were not in agreement on the effective date of the release. Mr. Ballas appears to be aware that the TAS Companies had questions about past due open orders, and that these remaining deliveries could disrupt an agreement as to the timing of the mutual releases. As such, the January 5, 2021, proposal (with the conditions discussed in the January 5-13 emails) did not contain all terms essential to a settlement agreement.

## C. THE PARTIES DID NOT INTEND TO BE BOUND

Even if the Court were to find that the January 5-13 emails contained all essential terms to the agreement, the Court cannot hold that an enforceable settlement agreement existed unless the TAS Companies and Alatus intended to be bound by that agreement.

In *Eagle Force Holdings, LLC v. Stanley V. Campbell*, the Supreme Court elaborated on the conclusions in *Leeds* and further explained the importance of all essential or material terms being agreed to prior to a court finding the parties intended to be bound noting:

> Though *Leeds* concerned a letter of intent, common sense suggests that parties to a sophisticated commercial agreement, let alone any agreement, would not intend to be bound by an agreement that does not *address* all terms that they considered material and essential to that agreement-a different inquiry than whether these terms are sufficiently definite. **As such, all essential or material terms must be** agreed upon before a court can find that the parties intended to be bound by it, and thus, enforce an agreement as a binding contract. What terms are material is determined on a case-by-case basis, depending on the subject matter of the agreement and on the contemporaneous evidence of what terms the parties considered essential.[54]

Accordingly, the Court must find that all essential or material terms have been agreed upon before finding that the parties intended to be bound.

The question of whether the parties intended to be bound by the contract "looks to the parties' intent as to the contract as a whole, rather than analyzing whether the parties possess the

---

[54] *Eagle Force Holdings, LLC v. Stanley V. Campbell,* 187 A.3d 1209, 1230 (Del. 2018).

requisite intent to be bound by each particular term."[55]  "Under Delaware law, 'overt manifestation of assent—not subjective intent—controls the formation of a contract.'"[56]  When applying this objective test to determine "whether the parties intended to be bound, the court reviews the evidence that the parties communicated to each other up until the time that the contract was signed . . ."[57]  "Delaware courts have also said that, in resolving this issue of fact, the court may consider evidence of the parties' prior or contemporaneous agreements and negotiations in evaluating whether the parties intended to be bound by the agreement."[58]

Alatus contends that the parties clearly intended to be bound.  The TAS Companies claim that the parties did not intend to be bound for two main reasons.  First, the TAS Companies argue that the contemporaneous and subsequent negotiations demonstrate a lack of assent to be bound.  Second, the TAS Companies note that the settlement was contingent on the execution of a written agreement.

i.        *Contemporaneous Conduct and Communications*

Alatus argues that the parties' agreement to extend the TAS Companies deadline to file a responsive pleading until January 29, 2021, reinforces an understanding between the parties that the agreement was final.  Additionally, Alatus asserts that the January 13 email correspondence is evidence of assent.  The TAS Companies disagree, claiming that the parties' contemporaneous conduct and communications belie the existence of an enforceable settlement agreement.

---

[55] *Id.* at 1229.
[56] *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014) (quoting *Indus. Am., Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 415 (Del. 1971)).
[57] *Eagle Force*, 187 A.3d at 1229.
[58] *Id.* at 1230.

### 1. Extension for Response

The email extending the deadline for a response from the TAS Companies does not support the theory that there was a shared understanding that the agreement was final. The Court thinks it is unclear—when looking at the emails about extensions of deadlines and the parties' subsequent actions—that the parties intended to be bound.

On January 18, 2021, the TAS Companies contacted Alatus requesting an extension and noting "that our clients are working to settle this matter."[59] Alatus argues that it agreed to this extension because it believed that it indicated the parties had reached a final settlement agreement. The course of negotiations contradicts this notion because this was not the first extension Alatus agreed to "in light of [] current settlement negotiations." On December 19, 2021, Alatus agreed to the first extension for the same reasons.[60] At neither point did the parties indicate that there would be an extension because there was a final settlement.

### 2. January 13, 2021, Email Exchange

Similarly, Alatus's argument that the January 13 email indicates intent to be bound is not clear. On January 13, 2021, Mr. Ballas indicates that he has attempted to capture both parties' perspectives and states that he believes they "are now agreed in principle on all material points."[61] However, he clarifies that it is "subject to the parties' signing a definitive settlement agreement" and asks Mr. Geisler when he estimates he will have time to review and revise the draft settlement agreement that he previously sent.[62] The question of reviewing and making

---

[59] Kelleher Decl., Ex. B.
[60] Kelleher Decl., Ex. A.
[61] Ballas Decl., Ex. C.
[62] *Id.*

15

revisions seem to demonstrate that neither Alatus nor the TAS Companies viewed the parties' communications as "concluding negotiations and forming a contract."[63]

Further, Mr. Geisler responds by indicating he is tied up and says he "will endeavor to get to it tomorrow and get something back to [Mr. Ballas] by either Friday or Monday."[64] The Court finds that this also demonstrates that the parties understood that the agreement still needed revisions which would not be complete until at the earliest later that week.

Alatus argues that its January 13, 2021 email, sent at 2:46 PM, supports its contention that the parties intended *that* draft of the settlement agreement to be the final draft. Alatus contends that the email states "this settlement is the 'global resolution' of all pending disputes and outstanding payments owed back and forth as between the parties. . . . Is that your understanding as well?"[65] The TAS Companies respond with a "Yes."[66] Despite this contention, in the same email Mr. Ballas makes clear that he is simply asking a question for clarification about the intention of the parties in the negotiation process, not asking for agreement on the proposal.[67] In fact, Mr. Ballas' previous email indicates that he was waiting on feedback from Mr. Geisler.[68]

Alatus provides the Court with caselaw supporting its position; however, the facts here differ significantly from those. In Alatus' cases, assent or agreement to the contract was express and the question for the Courts remained whether the nature of the assent (generally oral) was sufficient to bind the parties. In *Loppert v. Windsortech, Inc.*, the party stated "we have a deal at 1.1 million options," to which the other party responded "good – I'll let the company know."[69]

---

[63] *Leeds*, 521 A.2d at 1097.
[64] Ballas Decl., Ex. D.
[65] Ballas Decl., Ex. E.
[66] Ballas Decl., Ex. F.
[67] Ballas Decl., Ex. E.
[68] Ballas Decl., Ex. C.
[69] *Loppert v. Windsortech, Inc.*, 65 A.2d 1282, 1285 (Del. Ch. 2004).

16

In *Sarissa Capital Domestic Fund LP v. Innovita, Inc.*, parties "confirmed they 'had a deal.'"[70] In *Whittington v. Dragon Group LLC*, the parties did not "dispute that the parties reached a settlement agreement on all material terms."[71] Finally, in the case of *Delphi*, the parties told the court they were "settled in principle" and each threatened to enforce the agreement.[72]

Here, the sole communication which Alatus relies on to support the position that the parties were entirely in agreement and manifested assent is the one-word "Yes" email. While Alatus may have intended to be bound, the facts do not support the notion that the TAS Companies intended to be bound.

### 3. Subsequent Conduct

In *Leeds*, the Court discusses the significance of the subsequent conduct of the parties on the formation of a contract. There, the Court of Chancery found the subsequent conduct of the parties demonstrated they did not intend the letter to be the completion of all negotiations.[73] The parties met a month after the purported agreement for additional negotiations and "could agree on virtually nothing."[74] Thus, the Court of Chancery held that the original purported agreement was an agreement on certain terms, but it was not intended to be the final contract.

Similarly, the conduct of the TAS Companies and Alatus since the purported January 2021 Agreement is inconsistent with the notion that an enforceable settlement had been reached. For example, after the TAS Companies provided a competing draft settlement agreement that materially differed from Alatus's January 2021 proposal, Alatus stated they would "work with [the TAS Companies] new proposal in the interests of resolving this."[75] The TAS Companies

---

[70] *Sarissa Capital Domestic Fund LP v. Innovita, Inc.*, 2017 WL 6209597, at *3 (Del. Ch. Dec. 8, 2017).
[71] *Whittington v. Dragon Grp. LLC*, 2013 WL 1821615, at *3 (Del. Ch. May 1, 2013).
[72] *Delphi*, 2020 WL 1972857, at *8.
[73] *Leeds*, 521 A.2d at 1100.
[74] *Id.*
[75] Ballas Decl., Ex. G.

filed the Answer a week later, and Alatus did not argue that the TAS Companies had already settled or seek to enforce any previous settlement until the filing of the Motion.

Since January 2021, when Alatus argues the parties reached a binding agreement, both parties have exchanged competing settlement proposals with materially different terms. Like the parties in *Leeds*, Alatus and the TAS Companies conduct after January 2021 does not support the notion that they had both intended to be bound by the terms of the January 2021 settlement agreement.

### ii.    *Contingency on the Execution of a Written Document*

The TAS Companies contend that it did not intend to be bound by an agreement absent a signed definitive contract.

The law in Delaware on this issue is clear:

> Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed.[76]

If the Court were to find that the parties' actions were in fact significant enough that they constituted "all the substantial terms of the contract" with "nothing left for future settlement," then it is the job of this Court to determine whether the parties "positively" agreed to condition the settlement on the execution of a written agreement.

Alatus has correctly identified the controlling cases of *Delphi* and *Sarissa Capital*; however, the facts differ in a meaningful way from both cases. In *Delphi* the parties had agreed on all material aspects of the agreement and the only outstanding matter was whether the

---

[76] *Delphi*, 2020 WL 1972857, at *5 (citing *Loppert*, 865 A. 2d at 1287) (quoting *Universal Products Co. v. Emerson*, 179 A. 387, 394 (Del. 1935)).

settlement agreement was contingent on the execution of a written document.[77] As discussed above, the parties had several outstanding matters to discuss. As such, the matter of whether the parties positively agreed to condition the settlement on the execution of a written agreement is not necessary.

In *Sarissa Capital*, the parties had been negotiating back and forth verbally with the intention of reducing their talks to writing.[78] One of the parties drafted a settlement agreement and press release which did not provide that it would become effective only upon signature. Shortly after sending over the draft the parties verbally agreed to the contract.[79] The Court found that these facts did not indicate that the parties "positively agree[d] that such agreement should not be binding until so reduced to writing and formally executed."[80]

Here, unlike in *Sarissa Capital*, the written agreement that Alatus purports to be a final settlement agreement does include the condition that the parties sign an agreement for it to be final. On January 13, 2021, Mr. Ballas from Alatus emailed the TAS Companies stating that he believes they "are now agreed in principle on all material points" but qualifies the agreement by noting that it is "subject to the parties' signing a definitive settlement agreement."[81] This indicates that Alatus designated a subsequent writing as a necessary precondition to being bound.

Because the substantial terms of the contract had not been agreed upon and given the precondition of a signed definitive settlement agreement, the Court finds that settlement was contingent—or subject to—Alatus and the TAS Companies signing a settlement agreement.

---

[77] *Delphi*, 2020 WL 1972857, at *6.
[78] *Sarissa Capital*, 2017 WL 1821615, at *23.
[79] *Id.*
[80] *Id.* at *24.
[81] Ballas Decl., Ex. C.

19

Beyond conditioning settlement on a written agreement, Alatus believed there was no settlement agreement as of January 22, 2021. In an email, Mr. Ballas, in part, writes:

> *We need a response from you on #2 above by 8am Pacific on Monday morning. After that, we will resume our efforts on the Delaware litigation.* In the meantime, Alatus is reviewing your Excel item by item to confirm it/provide the delivery dates, and is also pulling the POs for all raw materials on order per your request.[82]

Mr. Ballas is setting a deadline for the TAS Companies to provide whether there is a settlement and asserting that if no response is received then Alatus would resume this litigation. The TAS Companies did not respond with an email. Instead, the TAS Companies filed the Answer.

The Court cannot find there was an agreed upon settlement with this record. Accordingly, the Court denies the Motion.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion.

Dated: December 27, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[82] *Id.* (emphasis added).

20